## WILLIAM P. McNISH *v.* THE AMERICAN BRASS COMPANY ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued April 8—decided June 3, 1952

*David R. Lessler,* for the appellant (plaintiff).

*William J. Larkin, 2d,* and *Walter F. Torrance, Jr.,* with whom, on the brief, was *William J. Larkin,* for the appellee (named defendant).

*Margaret C. Driscoll,* for the appellee (defendant union).

BALDWIN, J. The plaintiff brought a complaint in two counts against The American Brass Company, hereinafter referred to as the company, and the Ansonia Brass Workers' Union Local No. 445, Provisional Metal Workers Council of the Industrial Union of Marine and Shipbuilding Workers of America, Congress of Industrial Organizations, hereinafter referred to as the union. In the first count he charged the company with a breach of a collective bargaining agreement between the company and the union. In the second count he charged the company and the union with conspiracy to oust him permanently from employment. He claims damages for lost wages and an injunction compelling the performance of the agreement. The defendants' answers denied the breach and conspiracy and set up special defenses, to which the plaintiff demurred. The trial court overruled the demurrer and the

plaintiff has appealed from the judgment entered upon his failure to plead over.

We direct our attention to the second count of the complaint, which incorporates by reference the allegations of the first count. The significant allegations are as follows: On September 23, 1940, the plaintiff entered the employ of the company at its Ansonia branch. He was transferred on February 15, 1943, to the cost department, the employees of which were a part of the clerical bargaining unit, with departmental and clerical unit seniority as of that date. He continued in that department until August 2, 1948. On that date the defendant union was the duly elected and exclusive bargaining representative for the clerical bargaining unit for the purposes of collective bargaining in respect to rates of pay, wages, hours and other conditions of employment such as seniority, layoff and discharge. It executed a collective bargaining agreement with the company providing, among other things, for seniority, and that layoffs and rehiring would be made by the company in keeping with the provisions thereof. On December 3, 1948, the plaintiff, while still a member of the unit, was laid off in violation of his seniority rights under the collective bargaining agreement. Although his seniority entitled him to re-employment in his regular department or to a transfer to another where he was capable of doing the work, the company refused to re-employ him. The plaintiff was not a member of the union. He had been debarred from membership in 1947. The company and the union rearranged seniority rights without the knowledge or permission of the plaintiff so that other members of the clerical bargaining unit, and particularly one or more members of the union, were wrongfully given rights of seniority superior to

those of the plaintiff. He tried to obtain a determination of his rights by way of the grievance procedure provided in the collective bargaining agreement, but the defendants by plan, scheme and conspiracy ousted the plaintiff from his employment and precluded him from re-employment. These acts of the defendants constituted an unjust discrimination against the plaintiff and a deprivation of his seniority rights under the collective bargaining agreement and were violations of the Taft-Hartley Act.

The special defenses of the defendants may be summarized as follows: The company is engaged in interstate commerce as defined by the Labor Management Relations Act of 1947 (the Taft-Hartley Act). On June 2, 1949, the plaintiff filed charges with the regional director of the national labor relations board which alleged that the defendants were under the jurisdiction of that board. The charges were that the defendants had discriminated against the plaintiff and violated the collective bargaining agreement by denying him his seniority rights and refusing to arbitrate his claim, which was an arbitrable matter under the contract and under the National Labor Relations Act, and that such actions constituted unfair labor practices affecting commerce. The plaintiff requested a hearing and such action as the board might determine. The charges were investigated, but the regional director declined to issue a complaint for lack of sufficient evidence. However, the director advised the plaintiff that he could appeal and told him the procedure to follow. The plaintiff failed to take an appeal. On June 7, 1950, after instituting this suit, the plaintiff sought to withdraw, nunc pro tunc, the charges he had filed with the regional director of the national labor relations board, but his motion to do so was denied. The

claims advanced in the present complaint are identical with those which were made in the charges filed with the national labor relations board and which were there designated by the plaintiff himself as unfair labor practices.

The plaintiff's demurrer admitted facts well pleaded in the special defenses. *Hardy* v. *Scott,* 127 Conn. 722, 723, 19 A.2d 420. On this basis the defendants claim: The plaintiff's charges are within the exclusive jurisdiction of the national labor relations board. The plaintiff having filed charges with the board upon which the board has taken action, the matter is res adjudicata. The exclusive remedy available to the plaintiff is under the collective bargaining agreement and the enforcement thereof by invoking the powers of the national labor relations board. The union also alleged in its first special defense that the acts done by the defendants were pursuant to and permissible under the contract.

While the plaintiff's demurrer reached the defenses of lack of jurisdiction in the courts, res adjudicata, and the failure to pursue an exclusive remedy prescribed under the Labor Management Relations Act of 1947, it did not reach the first special defense filed by the union. We prefer, however, to base our decision upon the questions of substantive law arising under the demurrer.

The answer to the question whether the national labor relations board has exclusive jurisdiction to hear and determine the plaintiff's charges and grant or deny him relief, raised by the second and third grounds of the demurrer, is determinative of the case. The allegations of the special defenses attacked by the demurrer must be "tested by the facts provable under them." We must give to them the same favorable construction that a trier might deem

itself required to give in admitting evidence under them to prove the facts asserted. *Rutt* v. *Roche,* 138 Conn. 605, 609, 87 A.2d 805.

In enacting the National Labor Relations Act of 1935, known as the Wagner Act, 49 Stat. 449, 29 U.S.C. § 151 (1940), and the Labor Management Relations Act, 1947, known as the Taft-Hartley Act, 61 Stat. 136, 29 U.S.C. § 141 (Sup. 4, 1951), Congress sought to reach only some of the aspects of the employer-employee relationship. *Bethlehem Steel Co.* v. *New York Labor Relations Board,* 330 U.S. 767, 773, 67 S. Ct. 1026, 91 L. Ed. 1234. In those fields in which it was intended that the legislation should be operative, the regulations enacted into law by the Congress are exclusive. *Amalgamated Assn. of Employees* v. *Wisconsin Board,* 340 U.S. 383, 389, 71 S. Ct. 359, 95 L. Ed. 364; *International Union* v. *O'Brien,* 339 U.S. 454, 457, 70 S. Ct. 781, 94 L. Ed. 978; *La Crosse Telephone Corporation* v. *Wisconsin Board,* 336 U.S. 18, 24, 69 S. Ct. 379, 93 L. Ed. 463; *Bethlehem Steel Co.* v. *New York Labor Relations Board,* supra; *Norris Grain Co.* v. *Seafarers' International Union,* 232 Minn. 91, 99, 46 N.W.2d 94; *Pittsburgh Rys. Co. Employees' Case,* 357 Pa. 379, 382, 54 A.2d 891. The confusion which would result from dual control is graphically described in the *Bethlehem Steel Co.* case, supra, 775.

One of the phases of this relationship which the national labor relations acts do purport to cover is the matter of unfair labor practices. The Labor Management Relations Act, 1947, provides: "The [national labor relations board] is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice . . . affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has

been or may be established by agreement, law, or otherwise." 61 Stat. 146, § 10(a), 29 U.S.C. § 160(a) (Sup. 4, 1951). While the words "[t]his power shall be exclusive," contained in § 10(a) of the National Labor Relations Act, 49 Stat. 453, 29 U.S.C. § 160 (1940) were eliminated in the 1947 act, the amendment did not have the effect of giving the state courts jurisdiction to provide a remedy for unfair labor practices in direct proceedings. The board still retained exclusive jurisdiction. "It is well settled that the exclusive remedy for the commission of an unfair labor practice was in proceedings before the National Labor Relations Board under the Wagner Act. 29 U.S.C.A. § 160 (a); Amalgamated Utility Workers v. Consolidated Edison Co. of New York, 1940, 309 U.S. 261, 60 S. Ct. 561, 84 L. Ed. 738. The same is true under the National Labor Relations Act as amended by the Taft-Hartley Act, except in so far as the district courts are given jurisdiction over certain suits for injunctions brought by the Government and over suits brought by private parties under §§ 301 and 303, discussed above. [Sections 301 and 303 refer to suits involving secondary boycotts. 61 Stat. 156, 158, 29 U.S.C. §§ 185, 187 (Sup. 4, 1951).] California Association of Employers v. Building and Construction Trades Council, 9 Cir., 1949, 178 F.2d 175; Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 1948, 167 F.2d 183. Cf. Slocum v. Delaware, L. & W. R. R. Co. [339 U.S. 239, 70 S. Ct. 577, 94 L. Ed. 795]." *Schatte* v. *International Alliance,* 182 F.2d 158, 166, cert. denied, 340 U.S. 827, 71 S. Ct. 64, 95 L. Ed. 608; 2 Teller, Labor Disputes & Collective Bargaining, § 271.

The plaintiff concedes that the board has exclusive jurisdiction under the Labor Management Relations

Act of 1947 over proceedings involving the prevention of conduct that can be designated as an unfair labor practice. He claims that the second count of his complaint states a cause of action for conspiracy to deprive him of his seniority rights, and not for an unfair labor practice. The test lies in examining the facts alleged and standing as admitted under the demurrer, in the light of the terms of the act. Unfair labor practices are defined in § 8. 61 Stat. 140, 29 U.S.C. § 158 (Sup. 4, 1951). The pertinent provisions are: "(a) It shall be an unfair labor practice for an employer—(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . . (b) It shall be an unfair labor practice for a labor organization or its agents—(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership. . . ."

The plaintiff alleges in the second count that he was not a member of the union. He states that he was debarred from becoming a member by a vote of the union. He charges that the company and the union rearranged seniority rights without his knowledge, permission and consent so that other employees of the bargaining unit, "particularly one or more members of Local No. 445 P.M.C. [the defendant union], were wrongfully given an earlier seniority than they were entitled to have as against the Plaintiff's seniority." He asserts that the de-

fendants planned, schemed and conspired to oust him from his employment and to preclude him therefrom and that the defendants' actions "were an unjust discrimination" against him. For the purpose of a decision on the demurrer, he concedes that he filed charges against the defendants with the national labor relations board in which he himself claimed that the actions of the defendants which were the grounds of his complaint "constitute unfair labor practices affecting commerce within the National Labor Relations Act." These charges of deprivation of seniority rights in favor of union members and of planning, scheming and conspiring to discriminate against him cannot, by the circumstances under which the actions were alleged to have been perpetrated and by their very nature, as well as by the plaintiff's own characterization of them, be interpreted otherwise than as charges of unfair labor practices under the act. To discriminate in hiring, in tenure, or concerning any term or condition of employment by reason of union activities is an unfair labor practice. The cases are legion. See 29 U.S.C.A. § 158, n. 159, and Sup. 1951. Likewise, discrimination against an employee because he, like the plaintiff in this case, is not a member of the union representing the employees of a particular employer, or because he fails or refuses to join one, is an unfair labor practice under the act. *National Labor Relations Board* v. *American Car & Foundry Co.,* 161 F.2d 501, 503; *Virginia Electric & Power Co.* v. *National Labor Relations Board,* 132 F.2d 390, 396; *National Labor Relations Board* v. *Yale & Towne Mfg. Co.,* 114 F.2d 376, 378; *National Labor Relations Board* v. *Empire Worsted Mills, Inc.,* 129 F.2d 668, 669; *National Labor Relations Board* v. *Waterman Steamship Corporation,* 309 U.S. 206,

218, 60 S. Ct. 493, 84 L. Ed. 704; 2 Teller, Labor Disputes & Collective Bargaining, § 305, pp. 828, 830, § 309, p. 838, § 310, p. 838, § 324, p. 867; 173 A.L.R. 1424. The actions of the defendants set forth in the second count of the complaint in the case at bar constitute unfair labor practices under the act. The plaintiff's remedy, therefore, lies within the exclusive jurisdiction of the national labor relations board.

The plaintiff himself recognized this fact when he instituted proceedings before that board. Section 10 of the Labor Management Relations Act, 1947, 61 Stat. 146, 29 U.S.C. § 160 (Sup. 4, 1951), as supplemented by 29 C.F.R. 40, § 101.1 et seq., and 29 C.F.R. 52, § 102.1 et seq., provides an adequate remedy for unfair labor practices. In a justifiable case, the act allows an ultimate appeal to a United States Court of Appeals. 61 Stat. 148, § 10(f), 29 U.S.C. § 160(f) (Sup. 4, 1951). As heretofore stated, the plaintiff described the actions of the defendants as "unfair labor practices." However, before exhausting his remedy before the board he attempted to withdraw his charges, nunc pro tunc, and instituted this suit. When an administrative remedy is provided by law, relief must be sought by exhausting this remedy before resort to the courts. *Myers* v. *Bethlehem Shipbuilding Corporation,* 303 U.S. 41, 50, 58 S. Ct. 459, 82 L. Ed. 638; *United States* v. *Ruzicka,* 329 U.S. 287, 290, 67 S. Ct. 207, 91 L. Ed. 290; *United States* v. *Sing Tuck,* 194 U.S. 161, 167, 24 S. Ct. 621, 48 L. Ed. 917; Berger, "Exhaustion of Administrative Remedies," 48 Yale L. J. 981, 993; 42 Am. Jur. 580, 591. As previously stated, we construe these pleadings as alleging charges of unfair labor practices. That being so, the plaintiff must first resort to the board and ex-

haust his remedy there. *Costaro* v. *Simons,* 302 N.Y. 318, 321, 98 N.E. 2d 454.

The plaintiff claims that the first count of the complaint sets forth a cause of action against the company for breach of contract. However, the demurrer interposed by the plaintiff to the special defenses was general in that it claimed that they failed to state a defense sufficient in law against either count. The defenses being good as against the second count, the demurrer fails and was properly overruled. *Cashman* v. *Meriden Hospital,* 117 Conn. 585, 588, 169 A. 915, and cases cited.

The decision of the trial court overruling the demurrer as it was addressed to the defendants' second and third special defenses was correct. This view of the case makes it unnecessary for us to consider the question of res adjudicata.

There is no error.

In this opinion the other judges concurred.