HOLMAN *v.* INDUSTRIAL STAMPING &
MANUFACTURING COMPANY.

1. LABOR RELATIONS—SENIORITY—PURCHASE OF ONE EMPLOYER BY
   ANOTHER—HIRING DATE.

   The question of seniority in job status when one employer pur-
   chases the business of another is not solely dependent upon
   the so-called "hiring" date, the date when the new employer
   hires employees of the former employer (29 USCA 1954 Cum·
   Supp § 159[b]).

2. SAME—SENIORITY—UNION CONTRACTS—PURCHASE OF ONE EMPLOY-
   ER BY ANOTHER.

   Contracts between unions and employers must yield to the pro-
   cedures and functions of the Federal labor management re-
   lations act when one employer purchases the business of
   another and consolidates the activities theretofore conducted
   separately, when the matter of seniority in job status is to
   be determined (29 USCA 1954 Cum Supp § 159[b]).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–5]  31 Am Jur, Labor §§ 102, 112.
[1–5]  Modification, abrogation, or termination of collective labor
       agreements, or departure from agreement preliminary thereto.
       153 ALR 60.
Construction and application of seniority provisions in labor rela-
       tions agreements.  174 ALR 572.
[6]  31 Am Jur, Labor §§ 66, 145.
[7]  31·Am Jur, Labor §§ 335–337.
[8]  31 Am Jur, Labor §§ 166, 168–171.
[9]  31 Am Jur, Labor § 112.
[10]  31 Am Jur, Labor §§ 112, 154.
[11]  31 Am Jur, Labor §§ 66, 112.
[12, 13]  31 Am Jur, Labor § 100.
[15]  42 Am Jur, Public Administrative Law §§ 195, 197.
[16–19]  31 Am Jur, Labor §§ 66, 67.
[16–19]  Controversy within labor union regarding seniority rights
       as subject·of litigation in civil courts.  142 ALR 1055.
[20]  28 Am Jur, Injunctions § 350; 31 Am Jur, Labor § 389.

3. SAME—PURCHASE OF ONE EMPLOYER BY ANOTHER—NEW BARGAIN-ING UNITS.

A determination of an entirely new bargaining unit, direction of an election and subsequent certification by the national labor relations board imply at least a reconsideration and probably a modification of matters covered by previous contracts, such to be negotiated by the newly-certified bargaining representative and the employer, where latter has purchased the business of another employer and consolidated the activities theretofore conducted separately (29 USCA 1954 Cum Supp §§ 158[d], 159[a]).

4. SAME—SENIORITY RIGHTS—COLLECTIVE BARGAINING CONTRACTS.

Seniority rights are not inherent in the employment relationship and are generally created and can be modified by collective bargaining contracts, notwithstanding adverse effects to some employees.

5. SAME—SENIORITY RIGHTS—NEW BARGAINING UNIT.

Seniority rights accumulated under contracts antedating the certification of a new bargaining representative for a new bargaining unit are not unchangeable, but may be the subject of negotiations for a new contract superseding the old ones, providing the later negotiations result from good-faith collective bargaining. (29 USCA 1954 Cum Supp §§ 158[d], 159[a]).

6. SAME—NATIONAL LABOR RELATIONS BOARD—JURISDICTION—NEW BARGAINING UNIT AND REPRESENTATIVE—SENIORITY RIGHTS.

The national labor relations board had jurisdiction to issue an election directive upon the acquisition of one employer by another where the activities theretofore conducted separately were combined and both the employer and 3 of the 4 unions theretofore representing employees engaged in stamping and plating work petitioned the board for an election and the board's regional director thereafter refused to issue a complaint upon the part of employees whose seniority status was adversely affected by action taken by the new bargaining unit with the newly-elected bargaining representative of the employees (29 USCA 1954 Cum Supp §§ 158[d], 159[a]).

7. INJUNCTION—PICKETING—BREACH OF THE PEACE—LABOR MANAGEMENT RELATIONS ACT.

States may enjoin mass or coercive picketing threatening a probable breach of the State's peace or unannounced and intermittent work stoppages constituting "unprotected activity"

under the labor management relations act (29 USCA 1954 Cum Supp §§ 158[d], 159[a]).

8. LABOR RELATIONS—NATIONAL LABOR RELATIONS BOARD—COURTS— JURISDICTION.

The exercise of jurisdiction by the national labor relations board taken with its refusal to issue a complaint or a finding that no unfair labor practice was engaged in may, in some circumstances, amount to a sanctioning of the activities complained of or an indication that the activities are protected as a matter of the board or labor management relations act policy and should be left alone by State court (29 USCA 1954 Cum Supp §§ 158[d], 159[a]).

9. SAME—SENIORITY RIGHTS—COLLECTIVE BARGAINING—LABOR MANAGEMENT RELATIONS ACT.

Seniority rights are within the purview of sections of the labor management relations act setting forth the national policy to encourage the practice and procedure for collective bargaining and making the certified bargaining representative the sole representative for purposes of collective bargaining (29 USCA 1954 Cum Supp §§ 151, 157, 159[a]).

10. SAME—PURCHASE OF ONE EMPLOYER BY ANOTHER—SENIORITY RIGHTS—JURISDICTION.

The effect of the national labor relation board's designation of a new bargaining unit, direction of election and certification of a bargaining representative, regardless of existing contracts with antecedent units of employer which had purchased the business of another employer, coupled with the later determination that the evidence was insufficient to show conduct violative of the act, amounted to a virtual mandate that negotiations between the new bargaining agent and the employer were to be left undisturbed by a State court, it being under the protection of the Federal act that there be freedom to resolve at the bargaining table the problem of seniority rights of all employees of the employer (29 USCA 1954 Cum Supp §§ 151, 157, 159[a]).

11. SAME—PURCHASE OF ONE EMPLOYER BY ANOTHER—SENIORITY RIGHTS—REMEDY.

The fact that employees of an employer, which had purchased the business of another employer and rehired some of the latter's employees, were adversely affected insofar as their seniority rights were concerned and had no remedy therefor is not merely because congress and the national labor relations board failed to provide it, but because congress and the

board, in failing to provide for or allow it, made it manifest that none should be had either administratively or judicially so far as a State court is concerned (29 USCA 1954 Cum Supp §§ 151, 157, 159[a]).

12. SAME—DUTY OF BARGAINING REPRESENTATIVE.

A bargaining representative of a labor union, engaged in collective bargaining, has a statutory duty to bargain with regard to rights of all employees whom he represents without hostile discrimination, fairly, impartially, and in good faith (29 USCA 1954 Cum Supp §§ 151, 157, 159[a]).

13. SAME—PURCHASE OF ONE EMPLOYER BY ANOTHER—HIRING DATE —GOOD-FAITH BARGAINING.

Mere disagreement as to hiring date for seniority purposes of former employees of employer whose business had been purchased by the employer of plaintiff employees *held,* not to have constituted bad faith or breach of statutory duty on part of bargaining agent, under the circumstances, such as to justify judicial interference, where contract had not as yet been entered into between new employing unit and new bargaining unit (29 USCA 1954 Cum Supp §§ 151, 157, 159[a]).

14. SAME—BARGAINING AGENTS—STATUTES—CONTRACTS.

While there can and should be no difference between contract, statutory or other types of rights in regard to the statutory duty of a bargaining agent, there can be difference as to the effect collective bargaining negotiations may have upon them (29 USCA 1954 Cum Supp §§ 151, 157, 159[a]).

15. ADMINISTRATIVE LAW—COURTS.

One who has rights to be determined by an administrative tribunal is not entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.

16. LABOR RELATIONS—EXHAUSTION OF INTRA-UNION AND ADMINISTRATIVE TRIBUNAL REMEDIES—COURTS.

Employees of purchasing employer who failed to exhaust either their intra-union remedies by way of appeal from action taken by union as bargaining representative or by way of appeal from action of the regional director of the national labor relations board with respect to their seniority rights, were not entitled to interference by a State court with action which had been taken that had adversely affected their seniority rights (29 USCA 1954 Cum Supp §§ 151, 157, 159 [a]).

17. SAME—EXHAUSTION OF INTRA-UNION REMEDIES—COURTS.

The requirement of exhaustion of intra-union remedies before resort may be had to the courts by a member of the union is a judicially imposed one and is not in any way dependent upon the presence or absence of such requirement in union governing rules.

18. SAME—EXHAUSTION OF INTRA-UNION REMEDIES—NATIONAL LABOR RELATIONS ACT—UNFAIR LABOR PRACTICES—COURTS.

Whether or not the exhaustion of intra-union remedies is futile, because plaintiffs, now members of new bargaining agent union which had been elected after the employer had purchased the business of another employer, were previously members of a different union, would be a matter of unfair labor practices for determination by the national labor relations board and outside the jurisdiction of a State court (29 USCA 1954 Cum Supp §§ 158[a][3], 158[b][2]).

19. SAME—FEDERAL POLICY—JUDICIAL INTERFERENCE—SENIORITY.

The need for consistent application of a uniform Federal policy in labor relation matters outweighs the need for speedy preventive relief by way of injunction prior to exhaustion of remedies within a members' union or that afforded by the national labor relations board, claimed to be so slow and cumbersome as to be inadequate to prevent irreparable injury to an employee whose seniority status appears to him to be threatened after his employer had purchased the business of another employer and rehired some of the latter's employees (29 USCA 1954 Cum Supp §§ 151, 157, 158[a][3], 158[b][2], 158[d], 159[a]).

20. COSTS—LABOR RELATIONS—INJUNCTION—SENIORITY RIGHTS.

No costs are allowed in suit to enjoin enforcement of interim seniority rules adversely affecting some employees of employer which had purchased the business of another employer and rehired some of the latter's employees, where it is determined that the State court had no jurisdiction to interfere with the action which had been taken.

Appeal from Wayne; Jayne (Ira W.), J. Submitted November 9, 1955. (Calendar No. 46,617.) Decided December 28, 1955.

Bill by Hollice Holman and others, for and on behalf of a group similarly situated as a class,

against Industrial Stamping & Manufacturing Company, division of Vinco Corporation, the Mechanics Educational Society of America (MESA Union) Local No. 6, and certain officers of the latter, for establishment of seniority rights and injunctive relief against discrimination in respect thereto. Motion by defendants to dissolve temporary restraining order and to dismiss bill.

Temporary restraining order dissolved. Plaintiffs appeal.

Motion to dismiss bill denied. Defendant Industrial Stamping & Manufacturing Company appeals.

Affirmed as to dissolution of temporary injunction. As to principal action, reversed and bill ordered dismissed.

*Edward N. Barnard,* for plaintiffs.

*Miller, Canfield, Paddock & Stone,* for defendant Industrial Stamping & Manufacturing Company.

*James P. Hannan* and *Jack G. Day,* for defendants. Mechanics Educational Society of America and its officers in opposition to plaintiff's appeal.

*Amicus curiae:*

*Theophil C. Kammholz,* General Counsel, *David P. Findling,* Associate General Counsel, *Marcel Mallet-Prevost,* Assistant General Counsel, *Norton J. Come* and *Duane Beeson,* for National Labor Relations Board.

BUTZEL, J. The Industrial Stamping & Manufacturing Company, a division of Vinco Corporation,

hereinafter referred to as defendant company, en-
gages in the business of stamping and plating auto-
mobile parts. Until September, 1954, its operations
were conducted in Detroit, Michigan, at 2 locations,
hereinafter referred to as the Epworth plant (stamp-
ing) and the Beaufait plant (plating). The em-
ployees of both plants were unionized and had
collective bargaining contracts with defendant com-
pany, the Epworth union being Local 174, UAW-CIO
and the Beaufait union being AFL Metal Polishers,
Local 1.

On September 24, 1954, defendant company pur-
chased the land, buildings, machinery and inventory
of the Detroit Boulevard plant of Parker-Wolverine
Division of the Udylite Corporation, whose business
was competitive with its own. The employees of
this Boulevard plant were also unionized, the stamp-
ing employees being represented by the Mechanics
Educational Society of America, hereinafter called
MESA, and the plating employees by Local 189,
UAW-CIO, each having collective bargaining con-
tracts with Parker-Wolverine. Upon consummation
of the purchase Parker-Wolverine notified its em-
ployees of the sale to defendant company, advised
them of the termination of their employment with
Parker-Wolverine, and further advised that defend-
ant company planned to offer many of them employ-
ment at the same plant. Almost contemporaneously
with the purchase and only a few days later, de-
fendant company did hire many of these former
Parker-Wolverine employees and continued the op-
eration of the Boulevard plant. Its plan was to
eventually merge all operations into the Boulevard
plant by transferring equipment and employees from
Epworth and Beaufait.

On September 27, 1954, defendant company also
filed a petition with the national labor relations
board, hereinafter referred to as the board, asking

that the 4 groups of employees at the 3 plants (Epworth, Beaufait, Boulevard stamping and Boulevard plating) be considered as a single bargaining unit and requesting the board to conduct an election to determine which union should become the sole bargaining representative. Locals 174 and 189 UAW-CIO filed similar petitions. MESA and AFL Metal Polishers, Local 1, were permitted to intervene and they objected to the petitions on the ground that their existing contracts were a bar to the proceedings. In its "Decision and Direction of Election" dated March 21, 1955, the board overruled this objection saying:

"We view the consolidated operations as being comparable to an entirely new operation. Therefore, the contracts of Local 1 and MESA covering only a fraction of the enlarged employee complement are not a bar to a present determination of representatives." (Citing *Greyhound Garage of Jacksonville, Inc.*, 95 NLRB 902 at 904; *New Jersey Natural Gas Company*, 101 NLRB 251 at 252; *Herman Lowenstein, Inc.*, 75 NLRB 377 at 379.)

The board further determined that defendant company was engaged in commerce within the meaning of the national labor management relations act, 1947, hereinafter referred to as the LMRA; that the appropriate bargaining unit consisted of employees at all 3 plants; and directed that an election be held. It also settled certain questions regarding eligibility to vote in the election. The election was held and defendant MESA was selected as the bargaining representative and was duly certified as such by the board.

Thereafter, defendant company and MESA commenced negotiations for a new contract presumably to settle, *inter alia*, the question of the adjustment of seniority rights as between defendant company's

employees at the Epworth and Beaufait plants and the rehired employees of the newly-acquired Boulevard plant, an issue necessarily raised by the consolidation of the different units each with its own seniority list. Prior to the completion of negotiations readjustments in employment became necessary resulting in the laying off of certain employees. The seniority rule adopted in reference to these lay-offs resulted in the dismissal of some of the employees at the Epworth and Beaufait plants and a retention of some of the employees at the Boulevard plant, these being the rehired Parker-Wolverine employees. In addition there were certain other job classification adjustments alleged to be to the detriment of Epworth and Beaufait employees.

Plaintiffs are and represent a number of employees at the Epworth and Beaufait plants, now members of defendant MESA. They contend that they were discriminated against by defendant MESA and/or the defendant company in the matter of the layoffs and job classifications. It is their position that the seniority of the Boulevard employees should date from September 27, 1954, the date such employees were rehired by defendant company following the purchase of that plant from Parker-Wolverine and that plaintiffs' seniority rights therefore took precedence, notwithstanding such old employees might have been doing like work even possibly at the same bench or machines for years while in the employ of Parker-Wolverine.

Plaintiffs filed charges with the board against MESA and the company alleging that the foregoing constituted unfair labor practices as defined in the LMRA. After these charges had been submitted to the board and while they were being considered by it, plaintiffs filed a bill of complaint in the circuit court for the county of Wayne in chancery praying for the issuance of an injunction re-

straining defendants MESA and company from discriminating against plaintiffs in regard to seniority and restraining defendants from taking any action which recognizes a date other than September 27, 1954, for seniority of the former employees of Parker-Wolverine. They asked for other miscellaneous relief. An *ex parte* restraining order was issued. Thereafter defendant company moved the court to dismiss the bill or in the alternative to dismiss the temporary restraining order and defendant MESA moved to dismiss the bill. Both motions were premised on the State court's lack of jurisdiction in the matter. The court below dissolved the restraining order, "the court being of the opinion that this court had no jurisdiction to issue said temporary restraining order for the reason that jurisdiction is in the national labor relations board."

However, the court also entered an order denying the motions to dismiss the bill of complaint. On leave granted, both sides have appealed, plaintiffs from the order dissolving the injunction and defendant company from the order denying dismissal of the bill. We granted a stay of the order dissolving the injunction.

Under the facts presented, is the State court precluded from taking jurisdiction in view of the policy and provisions of the national labor management relations act and the action of the national labor relations board? We are directly concerned with 1 aspect of the so-called problem of "Federal pre-emption" in the labor relations field, as well as certain other legal concepts.

Plaintiffs' ultimate contention is that seniority for the former employees of Parker-Wolverine can only date from September 27, 1954. They claim that the decision of the board designating all plants

and employees as 1 bargaining unit and directing an election also determined that the seniority date of the former employees of Parker-Wolverine was September 27, 1954, the date they were rehired by defendant company. Both defendants have consistently denied that the directive of the board contained such a finding. The brief *amicus curiae* filed in this Court and cause by the national labor relations board similarly denies plaintiffs' contention. While the decision of the board did speak of September 27, 1954, as the hiring date for the Boulevard employees, it did so only in the context in regard to who would be eligible to vote in the election for a bargaining representative. The question of seniority is quite different and, as we shall note, generally based upon, many considerations only 1 of which is "hiring" date. The decision on the charges filed with the board by plaintiffs, to which we shall later refer, stated that the election directive was not determinative of seniority status. We find plaintiffs' contention in that regard without merit.

While plaintiffs do not (and cannot here or under the act itself directly) contest the election directive and certification, we point out that the unit was determined, the election is directed and the bargaining representative certified pursuant to express provisions of the LMRA. 29 USCA 1954 Cum Supp § 159 (b). The gravamen of plaintiffs' complaint is that seniority rights under their contracts with defendant company could not be affected by the election and certification of a new bargaining representative or any negotiations or rules adopted between that representative and/or defendant company. To the contrary, we think plaintiffs' previous collective bargaining contracts similar in law to those of the individual employees in *J. I. Case Co.* v. *NLRB,* 321 US 332, 337 (64 S Ct 576, 88 L ed 762), where the court said that such contracts could not be availed of "to

forestall bargaining or to limit or condition the terms of the collective agreement." In effect, as well as explicitly, the court there held that the contracts must yield to the procedures and functions of the Federal act.

Apparently the board does have a generally so-called "contract bar policy." Evidently, however, it is merely a self-imposed procedural rule not prescribed or required by the statute. In *Kearney & Trecker Corp.* v. *NLRB* (CCA), 210 F2d 852, certiorari denied, 348 US 824 (75 S Ct 38, 99 L ed 649), the court stated that where there is an organizational disagreement in regard to recognition the board may abrogate its "contract bar policy" and when it will do so in order to effect the policy of the Federal act is entirely a matter of board policy and discretion. See, also, *NLRB* v. *Grace Co.* (CCA), 184 F2d 126, 129. The LMRA, 29 USCA 1954 Cum Supp § 159(a), provides:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment."

Section 8(d) of LMRA, 29 USCA 1954 Cum Supp § 158(d), requires of employers, employees, and labor organizations certain duties relative to termination and modifications of collective bargaining contracts, but releases them from some of these duties "upon an intervening certification of the board, under which the labor organization or individual, which is a party to the contract, has been superseded as or ceased to be the representative of the employees subject to the provisions of section 159(a)."

As to its meaning, the supreme court in *Algoma Plywood & Veneer Co.* v. *Wisconsin Employment Relations Board,* 336 US 301, 315 (69 S Ct 584, 93 L ed 691), stated that certification of a bargaining representative was "an assertion that as to this employer the State shall not impose a policy inconsistent with national policy, * * * or the national board's interpretation of that policy."

It thus appears that a determination of an entirely new bargaining unit, direction of an election and subsequent certification by the board imply at least a reconsideration and probably a modification of matters covered by previous contracts, such to be negotiated by the newly-certified bargaining representative and the employer. This would seem especially true in the case of plaintiffs' seniority rights. We have held that seniority rights are not inherent in the employment relationship and are generally created and can be modified by collective bargaining contracts, notwithstanding adverse effects to some employees. *Hartley* v. *Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees,* 283 Mich 201; *Ryan* v. *New York Central R. Co.,* 267 Mich 202; *cf., Zdero* v. *Briggs Manufacturing Co.,* 338 Mich 549; and *Elder* v. *New York Central R. Co.* (CCA), 152 F2d 361.

In the *Hartley Case, supra,* an action for damages for breach of contract and loss of seniority, this Court stated in regard to the plaintiff's seniority rights (p 206):

"The seniority rights acquired by her did not arise by virtue of her contract of employment with her employer, but existed by reason of the agreement of 1921 between the railway and the brotherhood. *Ryan* v. *New York Central R. Co.,* 267 Mich 202. This agreement was executed for the benefit of all the members of the brotherhood and not for the individual benefit of plaintiff. *When, by reason of changed econom-*

*ic circumstances, it became apparent that the earlier agreement should be modified in the general interest of all members of the brotherhood it was within the power of the latter to do so, notwithstanding the result thereof to plaintiff. The brotherhood had the power by agreement with the railway to create the seniority rights of plaintiff, and it likewise by the same method had the power to modify or destroy these rights in the interest of all the members."* (Emphasis added.)

In *Ford Motor Co.* v. *Huffman,* 345 US 330, 338, 339, 342 (73 S Ct 681, 97 L ed 1048), the petitioner claimed that certain provisions in the contract violated seniority rights given him under the selective service act and that the union's acceptance of the provisions exceeded its authority as bargaining representative under the LMRA. In the course of its opinion denying plaintiff's claims, the court noted:

"Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

"Compromises on a temporary basis, with a view to long-range advantages, are natural incidents of negotiation. Differences in wages, hours and conditions of employment reflect countless variables. Seniority rules governing promotions, transfers, layoffs and similar matters may, in the first instance, revolve around length of competent service. Variations acceptable in the discretion of bargaining representatives, however, may well include differences based upon such matters as the unit within

which seniority is to be computed, the privileges to which it shall relate, the nature of the work, the time at which it is done, the fitness, ability or age of the employees, their family responsibilities, injuries received in course of service, and time or labor devoted to related public service, whether civil or military, voluntary or involuntary. See, *e.g.*, *Hartley* v. *Brotherhood of Clerks,* 283 Mich 201; and see, also, Williamson & Harris, Trends in Collective Bargaining (1945), pp 100–103.   *   *   *

"Nor does anything in that act compel a bargaining representative to limit seniority clauses solely to the relative lengths of employment of the respective employees."

To the same effect see *Aeronautical Industrial District Lodge 727* v. *Campbell,* 337 US 521, 527, 528 (69 S Ct 1287, 93 L ed 1513).

It is evident as was held in the *Hartley Case supra,* and as a matter of policy under the LMRA that plaintiffs' seniority rights accumulated under contracts antedating the certification of a new bargaining representative for a new bargaining unit are not unchangeable. On the contrary, the certification of a new representative meant that plaintiffs' seniority rights were to be the subject of negotiations for a new contract superseding the old ones. It meant that plaintiffs' rights accumulated under their former contracts could be terminated or modified by good-faith collective bargaining. Any other interpretation of the board's action would allow existing contracts to subvert Federal policy in regard to certification of a bargaining representative for the appropriate unit as well as the process of collective bargaining. See *J. I. Case Co.* v. *NLRB, supra.*

While we do not consider the substantive merits of their claims, it appears in the complaint that 16 of the 17 plaintiffs specifically named as being dis-

criminated against were hired less than 2 years prior to September 27, 1954. Should these men necessarily be given absolute seniority over former employees of Parker-Wolverine who may have worked for that concern for many, many more years and who but for the circumstance of the purchase, a matter beyond their control, may be working at approximately the same jobs, at the same benches, and in the same plant? The very posing of the issue indicates that this is a matter to be settled by compromise and negotiation though the outcome may alienate or disgruntle a few.

This conclusion is fortified by our interpretation of the effect of the board's further action. As previously noted, plaintiffs filed charges against MESA and the company alleging unfair labor practices as defined in the LMRA. It is evident that these charges were based upon the same facts alleged in plaintiffs' bill of complaint in the State court, On August 26, 1955, the board's regional director refused to issue a complaint, saying:

"It does not appear * * * that there is sufficient evidence that any conduct engaged in or attempted to date is violative of the act. Further proceedings at this time do not appear to be warranted."

In passing, it may be said that in view of the election directive and consideration by the board of the charges filed by plaintiffs there can be no question as to the board's jurisdiction insofar as defendant company's relation to commerce is concerned. The issue is: Can the State court exercise jurisdiction under these circumstances?

States may enjoin mass or coercive picketing threatening a probable breach of the State's peace, *Allen-Bradley Local No. 1111, United Electrical, Radio & Machine Workers of America* v. *Wisconsin*

*Employment Relations Board,* 315 US 740 (62 S Ct 820, 86 L ed 1154) ; *cf., Way Baking Co.* v. *Teamsters & Truck Drivers Local No. 164, AFL,* 335 Mich 478, or unannounced and intermittent work stoppages constituting "unprotected activity" under the LM RA. *International Union, UAWA, AFL, Local 232* v. *Wisconsin Employment Relations Board,* 336 US 245 (69 S Ct 516, 93 L ed 651). See, also, *Algoma Plywood & Veneer Co.* v. *Wisconsin Employment Relations Board, supra.*

However, the supreme court has denied assertion of jurisdiction under State statutes conditioning or curtailing the right to peacefully picket or strike, *International Union, UAW-CIO* v. *O'Brien,* 339 US 454 (70 S Ct 781, 94 L ed 978) ;\* *Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America, Div. 998* v. *Wisconsin Employment Relations Board,* 340 US 383 (71 S Ct 359, 95 L ed 364, 22 ALR2d 874), or under a State statute interfering with the federally protected and provided for right to choose a bargaining representative, *Hill* v. *Florida, ex rel. Watson,* 325 US 538 (65 S Ct 1373, 89 L ed 1782), or under a State statute dealing with certification of bargaining representatives. *LaCrosse Telephone Corp.* v. *Wisconsin Employment Relations Board,* 336 US 18 (69 S Ct 379, 93 L ed 463) ; *Bethlehem Steel Co.* v. *New York State Labor Relations Board,* 330 US 767 (67 S Ct 1026, 91 L ed 1234). See, also, *Plankinton Packing Co.* v. *Wisconsin Employment Relations Board,* 338 US 953 (70 S Ct 491, 94 L ed 588). In what has become the most notable case in this field, *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No. 776, AFL,* 346 US 485 (74 S Ct 161, 98 L ed 228), the court was concerned with peaceful picketing not in the context of a labor dispute or strike. A

---

\* Reversing *International Union, UAW-CIO* v. *Wayne Prosecuting Attorney,* 325 Mich 250.—REPORTER.

lower Pennsylvania court enjoined the practice as violative of the State labor relations law. The supreme court of Pennsylvania reversed and was affirmed by the United States supreme court, which said (pp 488–491):

"Congress has taken in hand this particular type of controversy where it affects interstate commerce. In language almost identical to parts of the Pennsylvania statute, it has forbidden labor unions to exert certain types of coercion on employees through the medium of the employer. It is not necessary or appropriate for us to surmise how the national labor relations board might have decided this controversy had petitioners presented it to that body. The power and duty of primary decision lies with the board, not with us. But it is clear that the board was vested with power to entertain petitioners' grievance, to issue its own complaint against respondents and, pending final hearing, to seek from the United States district court an injunction to prevent irreparable injury to petitioners while their case was being considered.   *   *   *

"A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.   *   *   *   And the reasons for excluding State administrative bodies from assuming control of matters expressly placed within the competence of the Federal board also exclude State courts from like action."

In the instant case the board has determined that there was insufficient evidence that the acts complained of in the State court were violative of the LMRA. Does this leave the State court free to act? It has been intimated that where the board has declined to exercise jurisdiction the State courts might then have jurisdiction. See *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776, AFL, supra,* at 488; *cf., Bethlehem Steel Co. v. New York*

*State Labor Relations Board, supra* (including dissent).   See, also, *Building Trades Council* v. *Kinard Construction Co.,* 346 US 933 (74 S Ct 373, 98 L ed 423) (where the court specifically refrained from considering the question).   However, here jurisdiction was exercised but no complaint issued.

In the *Garner Case, supra,* at 499, 500, the court stated:

"It must be remembered that petitioners' State remedy was a suit for an injunction prohibiting the picketing.   The Federal board, if it should find a violation of the national labor management relations act, would issue a cease-and-desist order and perhaps obtain a temporary injunction to preserve the *status quo.   Or if it found no violation, it would dismiss the complaint, thereby sanctioning the picketing.   *   *   *

"The detailed prescription of a procedure for restraint of specified types of picketing would seem to imply that other picketing is to be free of other methods and sources of restraint.   For the policy of the national labor management relations act is not to condemn all picketing but only that ascertained by its prescribed processes to fall within its prohibitions.   Otherwise, it is implicit in the act that the public interest is served by freedom of labor to use the weapon of picketing.   For a State to impinge on the area of labor combat designed to be free is quite as much an obstruction of Federal policy as if the State were to declare picketing free for purposes or by methods which the Federal act prohibits."   (Emphasis added.)

In *Bethlehem Steel Co.* v. *New York State Labor Relations Board, supra,* the court held that the State was without jurisdiction to designate a bargaining representative, the State law in that regard being necessarily in direct conflict with Federal law and policy.   The court initially stated (p 772):

"It has long been the rule that exclusion of State action may be implied from the nature of the legislation and the subject matter although express declaration of such result is wanting."

After considering the instances where the States might exercise jurisdiction, Justice Jackson said (p 774):

"However, the conclusion must be otherwise where failure of the Federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute."

In characterizing the board's refusal to entertain the plaintiff's petition to designate foremen as a separate bargaining unit, the court said (p 775):

"It made clear that its refusal to designate foremen's bargaining units was a determination and an exercise of its discretion to determine that such units were not appropriate for bargaining purposes. *Maryland Drydock Co.*, 49 NLRB 733. We cannot, therefore, deal with this as a case where Federal power has been delegated but lies dormant and unexercised."

It would thus appear that the exercise of jurisdiction plus a refusal to issue a complaint or a finding that no unfair labor practice was engaged in may, in some circumstances, amount to a sanctioning of the activities complained of or an indication that the activities are protected as a matter of board and LMRA policy and should be left alone. That this may be true is illustrated by the recent case of *Weber* v. *Anheuser-Busch, Inc.*, 348 US 468 (75 S Ct 480, 99 L ed 546). There, after certification, the bargaining representative in negotiations with the employer sought to obtain a contract provision to the effect that the employer would not contract for repair or replacement of machinery with other than

contractors having collective bargaining agreements with that particular bargaining representative. The minority union and the employer objected to such a provision and negotiations became deadlocked, whereupon the bargaining representative struck. The employer filed charges with the board alleging unfair labor practices. Pending the disposition of these charges the employer also sought an injunction in the State court, which was granted. The case came to the supreme court on certiorari from the State supreme court's affirmance of the granting of the injunction, the issue being one of Federal preemption. The board found that the LMRA had not been violated. In the course of an opinion holding the State court to have been without jurisdiction, the court said (pp 478, 481):

"Even if it were clear that no unfair labor practices were involved, it would not necessarily follow that the State was free to issue its injunction. If the conduct does not fall within the prohibitions of section 8 of the Taft-Hartley act,* it may fall within the protection of section 7.   *   *   *

"But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices and where the conduct, if not prohibited by the Federal act, may be reasonably deemed to come within the protection afforded by that act, the State court must decline jurisdiction in deference to the tribunal which congress has selected for determining such issues in the first instance."

Section 1 of the LMRA, 29 USCA 1954 Cum Supp § 151, declares that it is national policy to encourage "the practice and procedure of collective bargaining." Section 7, 29 USCA 1954 Cum Supp § 157, grants employees the right to bargain collectively. As noted, section 9(a), 29 USCA 1954 Cum Supp

---

* 29 USCA 1954 Cum Supp §§ 157, 158.—REPORTER.

§ 159(a), makes the certified bargaining representative the sole representative for purposes of collective bargaining. Seniority rights are within the purview of these sections. *Ford Motor Co.* v. *Huffman, supra.*

We are of the opinion that the effect of the board's designation of a new bargaining unit, direction of election and certification of a bargaining representative, regardless of existing contracts, coupled with the later determination that the evidence was insufficient to show conduct violative of the act amount to a virtual mandate that negotiations between defendants MESA and company were to be left undisturbed. What is under the "protection" of the Federal act in this case is the freedom to resolve at the bargaining table the problem of plaintiffs' seniority rights raised by the acquisition of the Boulevard plant and the rehiring of former Parker-Wolverine employees. The board has indicated by its actions pursuant to LMRA policy that the questions raised by plaintiffs' complaint are in the first instance to be determined by negotiations unfettered by the assertion in this or any court that their seniority rights are fixed and immutable. To enjoin defendants in the manner plaintiffs seek would be to unduly restrict that freedom of collective bargaining which the supreme court has declared to be one of the paramount objectives of the Federal act.

Plaintiffs rely principally upon the following cases: *Trailmobile* v. *Whirls,* 331 US 40 (67 S Ct 982, 91 L ed 1328) (particularly dissenting opinion); *Tunstall* v. *Brotherhood of Locomotive Firemen and Enginemen,* 323 US 210 (65 S Ct 235, 89 L ed 187); *Steele* v. *Louisville & Nashville R. Co.,* 323 US 192 (65 S Ct 226, 89 L ed 173); *Brotherhood of Railroad Trainmen* v. *Howard,* 343 US 768 (72 S Ct 1022, 96 L ed 1283); *Mount* v. *Grand International Brotherhood of Locomotive Engineers* (CCA 6th Cir, 1955), 37 LRRM 2034; *Ford Motor Co.* v. *Huffman, supra.*

Plaintiffs in all of these cases sought judicial redress for alleged discrimination by the bargaining representative in violation of its statutory duty. In the *Whirls Case* the petitioner sought to preserve seniority rights under the selective service act in a situation where there was a merger of companies and consequent dispute as to seniority. As noted, the *Huffman Case* also concerned alleged seniority rights under the selective service act. In the *Steele, Howard* and *Tunstall Cases* plaintiffs claimed racial discrimination. In the *Mount Case* the court was concerned with alleged discrimination in regard to a proposed contract provision changing the allocation of territorial and consequently seniority rights. As we shall explain these cases are not controlling in the instant situation.

In reference to the Federal pre-emption issue the court in the *Huffman Case* noted (p 332, n):

"This question was not argued in the court of appeals nor mentioned in its opinion and, in view of our position on the merits, it is not discussed here."

In the *Whirls Case* it was not discussed and the majority of the court said that the question of unlawful discrimination was not properly before the court. In later litigation arising out of the same basic facts the collectively bargained resolution of the seniority dispute was upheld, the "discrimination" being "in pursuance of the bargaining process and not without some basis." *Britt* v. *Trailmobile Co.* (CCA), 179 F2d 569, 573, certiorari denied, 340 US 820 (71 S Ct 52, 95 L ed 603). The *Steele, Howard* and *Tunstall Cases* arose under the railway labor act and plaintiffs were allowed to pursue a judicial remedy on the basis that no administrative remedy was afforded them under that act. The railway labor act is quite different from the LMRA both in administrative and substantive provisions.

A holding that a judicial remedy is appropriate merely because of a lack of an administrative remedy is to be differentiated from a situation where, as here, an administrative remedy is denied under circumstances where the denial amounted to a finding that no administrative or other remedy is to be had under the policy of the act. In the cases arising under the railway labor act, congress failed to give the plaintiffs an administrative remedy but no question of "protection" was involved. The same may be said of *United Construction Workers* v. *Laburnum Construction Corp.*, 347 US 656 (74 S Ct 833, 98 L ed 1025). In the instant case while plaintiffs may not now have an administrative or other remedy it is not merely because congress and the board failed to provide it but because congress and the board in failing to provide for or allow it made it manifest that none should be had either administratively or judicially.

In the *Mount Case* the court upheld its jurisdiction on the basis that employees under the railway labor act have a judicial remedy insofar as they dispute the validity of the contract. Here we do not as yet have a contract, but merely rules promulgated in an interim period during which a contract is to be negotiated. True, the court in the *Mount Case* found that plaintiff's action was not premature, even though the contract had not as yet been executed. However, in that case unlike the instant one, there was a long, well-defined and controversial history of the specifically proposed contract provision, plaintiff had completely exhausted his intra-union remedies, and no overriding policy of the railway labor act was involved. These are distinctions with a difference sufficient to find that plaintiffs' action is, among other facts not in their favor, premature.

To be sure, as was said in the *Steele Case*, a bargaining representative has a statutory duty to bar-

gain with regard to plaintiffs' rights (p 204) "without hostile discrimination, fairly, impartially, and in good faith."

In the instant case we do not have the type of bad faith essentially complained of in the *Steele* and other cases. It is obvious that plaintiffs would feel that they have a cause of action as long as defendants disagree with their contention that former Parker-Wolverine employees are to have a hiring date for seniority purposes of September 27, 1954, and no other date. Mere disagreement under the circumstances of this case does not, in our opinion, constitute per se bad faith and breach of statutory duty. The court in the *Steele Case* went on to say (p 203):

"This does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented. Variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority, the type of work performed, the competence and skill with which it is performed, are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interest or merit."

Plaintiffs' argument, in essence, amounts to a contention that acquisition of assets and consolidation of operations are not differences relative enough to warrant a modification of any rights which they might have. It may well be that when the contract is signed it will accord a measure of protection to plaintiffs' alleged rights. It may also be that plaintiffs may claim that the contract unlawfully and arbitrarily discriminates against them. But whether or not the bargaining representative has fulfilled its statutory obligation is yet another issue which is

not determinable here and which may or may not be a question under the LMRA, that a State court has jurisdiction to decide. Then too, most of the cases relied on by plaintiffs involve racial discrimination or seniority rights preserved by statute. While there can and should be no difference between contract, statutory or other types of rights in regard to the statutory duty of the bargaining agent, there can be a difference as to the effect collective bargaining negotiations may have upon them.

Further circumstances work to defeat plaintiffs' cause of action. Plaintiffs' charges against defendants under the LMRA were found unsubstantiated by the evidence. It was called to plaintiffs' attention in the decision of the regional director sent to the attorney for plaintiffs, that plaintiffs had a right to appeal under the LMRA. See 29 USCA 1954 Cum Supp § 160; 29 USCA App 1954 Cum Supp, Rules and Regulations, § 102.19. It is evident that plaintiffs have abandoned any further action before the board by way of such an appeal. It has been uniformly held that in cases of this character "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 US 41, 50, 51 (58 S Ct 459, 82 L ed 638); *McNish* v. *American Brass Co.*, 139 Conn 44 (89 A2d 566), certiorari denied, 344 US 913 (73 S Ct 336, 97 L ed 704).

It also appears that plaintiffs have failed to invoke, let alone exhaust, their intra-union remedies. In addition to being represented by defendant MESA for bargaining purposes, plaintiffs admit to being members thereof. The constitution and bylaws of MESA, article 4, § 2, provides:

"The N.A.C. shall act in all cases where a decision of any dispute is sought and to interpret and enforce the constitution and bylaws of the M.E.S.A."

Article 4, § 4, provides:

"In the event of a local violating the constitution of the M.E.S.A., written charges must be sent to the N.A.C. The N.A.C. shall constitute the trial board and act upon said charges."

The "N.A.C." is the national administrative committee which is composed of 1 or more delegates from each local. There are other provisions regarding grievances as well as charges against members. There is nothing in the record before us which indicates a real attempt by plaintiffs to adjust their differences within the framework of their union organization. Plaintiffs argue generally and in answer to cases involving specific governing provisions for exhaustion of union remedies, that "since the * * * constitution and bylaws contain no provision of the character contained in the cited cases, there is no basis whatever for the contention that remedies within the union must be exhausted."

It suffices to say that the requirement of exhaustion of intra-union remedies is a judicially imposed one not in any way dependent upon the presence or absence of such a requirement in union governing rules. If it be argued that such a requirement is, in this case, futile, it would logically only be so because plaintiffs while now members of MESA are being discriminated against because of their prior membership in a different union. Such a practice, if in fact engaged in, is obviously within the unfair labor practices set forth in the LMRA, see 29 USCA 1954 Cum Supp §§ 158(a)(3), 158(b)(2); *Wallace Corp.* v. *NLRB,* 323 US 248, 254–256 (65 S Ct 238, 89 L ed 216), and therefore outside the jurisdiction of a State court.

As a basis for the jurisdiction of the State court plaintiffs have alleged that the machinery of the board is so slow and cumbersome as to be inadequate

to prevent the irreparable injury suffered. In *Garner* v. *Teamsters Chauffeurs & Helpers Local Union No. 776, AFL, supra,* the court referred to a similar argument made by the dissenting justice in the Pennsylvania supreme court, but did not thereafter comment upon it. It may thus be inferred that the United States supreme court *sub silentio* considered the argument untenable. The various opinions of the court in this area leave little doubt but that the consistent application of a uniform Federal policy outweighs the need for speedy preventive relief.

The lower court dissolved the temporary injunction on the ground that the court was without jurisdiction. It refused to dismiss the complaint feeling that plaintiffs had "a law suit." As jurisdiction over the subject matter is the basis of our decision, we must dismiss the complaint as well as affirm the dissolution of the injunction. It is so ordered, but with no costs allowed.

CARR, C. J., and SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.