EDMOND v DEPARTMENT OF CORRECTIONS

LUTTRELL v DEPARTMENT OF CORRECTIONS

Docket Nos. 52779, 56020. Submitted November 5, 1981, at Lansing.—
Decided May 4, 1982. Leave to appeal applied for.

This appeal involves two Ingham Circuit Court cases dealing with
the Michigan Department of Corrections' authority to exclude
"drug traffickers", as defined by that department, from consid-
eration for eligibility in community placement programs. In
one case, Percy Edmond petitioned the court, seeking a perma-
nent injunction enjoining the Department of Corrections from
designating him as a "drug trafficker". The court, Jack W.
Warren, J., found the designation "drug trafficker" to be nei-
ther arbitrary nor capricious and denied Edmond any relief. In
the second case, Brenda S. Luttrell and Francis Garnica
brought a class action asserting, among other things, that the
Department of Corrections' blanket preclusion of consideration
of "drug traffickers" from participation in community place-
ment programs exceeded the department's statutory authority
to promulgate rules. The court, James T. Kallman, J., agreed
that the blanket exclusion violated the intent of the Legislature
and was arbitrary and capricious. Plaintiff, Percy Edmond,
appeals the decision in the first case and defendant, Depart-
ment of Corrections, brings a delayed appeal of the decision in
the second case by leave granted. The appeals have been
consolidated. *Held:*

1. The Department of Corrections exceeded its rule-making
authority by precluding "drug traffickers", as it defines the
term, from consideration for eligibility in community place-
ment programs. The policy of blanket refusal to consider "drug
traffickers" for community placement programs fails to com-

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law § 656.
[2] 73 Am Jur 2d, Statutes § 145.
[3] 73 Am Jur 2d, Statutes §§ 211, 212, 310.
[4] 73 Am Jur 2d, Statutes §§ 333, 334.
[5] 73 Am Jur 2d, Statutes §§ 150, 192.
[6] 73 Am Jur 2d, Statutes § 257.

port with the underlying legislative intent in enacting the statute authorizing community placement. The Department of Corrections may not exclude an entire class of prisoners from consideration for the community placement program. At the same time, participation in the community placement program by "drug traffickers" or anyone else is not a matter of right. The Department of Corrections remains free to choose to exclude individual prisoners from participation on a case-by-case basis.

2. The trial court's order in the Edmond case is reversed insofar as the court held that Edmond's classification as a "drug trafficker" automatically precluded his being considered for community placement. The trial court's order in the Luttrell case is affirmed insofar as the court's determination regarding the blanket preclusion of consideration of "drug traffickers" from community placement programs is concerned.

Affirmed in part, reversed in part and remanded.

1. ADMINISTRATIVE LAW — AGENCY RULES — JUDICIAL REVIEW.

Courts employ a threefold test to determine the validity of rules promulgated by an agency empowered to make rules: (1) whether the rule is within the matter covered by the enabling statute; (2) if so, whether it complies with the underlying legislative intent; and (3) whether it is arbitrary or capricious.

2. STATUTES — JUDICIAL CONSTRUCTION.

The primary obligation of the courts in construing a statute is to ascertain and effectuate the intent of the Legislature.

3. STATUTES — JUDICIAL CONSTRUCTION.

The express mention in a statute of one group or class implies the exclusion of other unnamed groups or classes.

4. STATUTES — JUDICIAL CONSTRUCTION.

It is assumed that where a legislative body enacts a statute based upon the laws of another jurisdiction, the borrowing state's Legislature intended any judicial construction of the statute rendered in the other jurisdiction to the extent that the enactments are analogous.

5. STATUTES — JUDICIAL CONSTRUCTION.

A court, in construing a statute, may consider the legislative history of the statute in order to ascertain the legislative intent.

6. STATUTES — JUDICIAL CONSTRUCTION.

It is a generally proper rule of statutory construction that where

two statutes encompass the same subject matter and are in conflict, the more specific provision controls.

*John W. Davis,* for Percy A. Edmond.

*Martin Geer* and *William Burnham,* for Brenda S. Luttrell and Francis Garnica.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas L. Casey,* Assistant Attorney General, for defendant.

Before: BRONSON, P.J., and T. M. BURNS and J. T. CORDEN,* JJ.

BRONSON, P.J. This appeal is a consolidation of two lower court cases involving the Department of Corrections' authority to exclude "drug traffickers", as defined by the department, from consideration for eligibility in community placement programs. By MCL 791.265a; MSA 28.2325(1), the Legislature empowered the director of the Department of Corrections to create community placement programs for prisoners who, it is reasonably believed, would "honor his trust". The department adopted a rule, 1979 AC, R 791.4410, and a departmental policy directive which precluded even the consideration of so-called drug traffickers for community placement eligibility.

In Docket No. 52779, plaintiff Edmond petitioned the circuit court, seeking a permanent injunction enjoining the department from designating him as a "drug trafficker". The Ingham County Circuit Court found the designation "drug trafficker" to be neither arbitrary nor capricious and denied him any relief. He appeals as of right.

Plaintiffs Luttrell and Garnica in Docket No.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

56020 brought a class action suit in the Ingham County Circuit Court asserting, among other things, that the Department of Corrections' blanket preclusion of consideration of "drug traffickers" from participation in community placement programs exceeded the department's statutory authority to promulgate rules pursuant to MCL 791.265a(2); MSA 28.2325(1)(2). The lower court agreed that the blanket exclusion violated the intent of the Legislature and was arbitrary and capricious. Defendant brings a delayed appeal on leave granted by order of this Court.

The fundamental issue for our resolution in this appeal is whether the Department of Corrections has exceeded its rule-making authority by precluding "drug traffickers", as it defines the term, from consideration for eligibility in community placement programs. In *Chesapeake & Ohio R Co v Public Service Comm,* 59 Mich App 88, 98-99; 228 NW2d 843 (1975), *lv den* 394 Mich 818 (1975), this Court formulated the following test to ascertain the validity of an administrative or departmental rule:

"Where an agency is empowered to make rules, courts employ a three-fold test to determine the validity of the rules it promulgates: (1) whether the rule is within the matter covered by the enabling statute; (2) if so, whether it complies with the underlying legislative intent; and (3) if it meets the first two requirements, when it is neither arbitrary nor capricious."

In the instant case, it is undisputed that the rule and policy directive is within the matter covered by the enabling statute. The gist of the dispute centers on whether the department's policy of blanket refusal to consider "drug traffickers" for community placement programs comports with the

underlying legislative intent in enacting the statute.

Pursuant to MCL 791.265a(2); MSA 28.2325(1)(2), the Department of Corrections promulgated 1979 AC, R 791.4410, which provides as is pertinent:

"Rule 410. (1) A resident is eligible for consideration for community status when the head of the institution at which he or she is confined reasonably believes that the resident will honor this trust, that release would not undermine public confidence in the program, and that the resident meets all of the following criteria:

* * *

"(c) Has no involvement in organized crime, professional criminal activities, or narcotics traffic. Residents with histories of substance abuse are eligible so long as there is no history of involvement in narcotics traffic beyond personal use and limited sale to support the resident's own addiction."

Pursuant to this rule, the director of the department issued a policy directive defining "drug trafficker" (note, however, that the administrative rule actually refers to "narcotics" traffickers). The policy directive has been amended and in its present form defines "drug trafficker" as follows:

"a. A conviction for delivery or possession of a controlled substance that involved:

"1. 7 grams or more of any substance containing heroin or cocaine, or

"2. One pound or more of marijuana, or

"3. 100 units (pills, capsules, etc.) of any other controlled substance.

"b. That local law enforcement officials (police or prosecutor) confirm on the basis of reliable evidence that the individual is considered by them to be a significant trafficker in controlled substances in the community.

"c. Conviction for delivery or possession with intent

to deliver controlled substances without any history of personal controlled substance use."[1]

The primary obligation of the courts in construing a statute is to ascertain and effectuate the intent of the Legislature. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956), *Avon Twp v State Boundary Comm,* 96 Mich App 736, 743; 293 NW2d 691 (1980). Applying accepted rules of statutory construction, we are unable to agree with the Department of Corrections that the legislation authorizing community placement evinces an intent to either: (a) exclude "drug traffickers" from consideration for participation in the program or (b) give the department unfettered discretion to consider or fail to consider any class of offenders it deems appropriate.

The Legislature has explicitly provided for the ineligibility of certain classes of prisoners from community placement as is evinced by MCL

---

[1] We note that the Department of Corrections' rule prohibits consideration of community placement for those who have had "involvement in *narcotics* traffic beyond personal use and limited sale to support the resident's own addiction". The policy directive, however, is more restrictive than the rule in many respects. First, the policy directive prohibits those with heavy involvement with marijuana from consideration for community placement, although marijuana is not a narcotic. See *People v Sinclair,* 387 Mich 91, 104-115; 194 NW2d 878 (1972). Second, the policy directive prohibits consideration of community placement for those who merely possessed a controlled substance, which is much different than actual trafficking as specified in the rule. Third, the rule only applies to some traffickers, *i.e.,* those whose trafficking went beyond personal use or to support a personal addiction, while the policy directive applies to *all* traffickers as defined in the directive. Fourth, the rule is obviously concerned with actual dealers, while the policy directive sets forth an extremely low quantity of heroin and cocaine ("7 grams or more of any substance containing heroin or cocaine") as the touchstone for labeling one a "drug trafficker". It is easily believable that one possessing a substance of seven grams containing heroin or cocaine possessed the same solely for personal use. To a somewhat lesser extent, the same is also true of one who possesses 100 units of some other controlled substance.

791.265a(5) and (6); MSA 28.2325(1)(5) and (6), which provide:

"(5) Prisoners convicted of a crime of violence or any assaultive crime shall not be eligible for the releases provided in this section (1) until such time as the minimum sentence imposed for the crime has less than 180 days remaining, except that where the reason for the release is to visit a critically ill relative, attend the funeral of a relative, or obtain medical services not otherwise available, the director may allow the release under escort for a period not to exceed 30 days.

"(6) Prisoners serving a sentence for murder in the first degree shall not be eligible for the releases under this section prior to initiation of official processing for commutation, and in no case prior to service of 15 calendar years with a good institutional adjustment."

Given that the Legislature severely restricted eligibility for community placement for prisoners convicted of violent or assaultive crimes and first-degree murder, but imposed no comparable restrictions on "drug traffickers", it seems unlikely that the Legislature did intend the Department of Corrections' blanket preclusion. This conclusion is supported by the doctrine of *expressio unius est exclusio alterius,* that is, that the express mention in a statute of one group or class implies the exclusion of other unnamed groups or classes. See *People v Lange,* 105 Mich App 263, 266; 306 NW2d 514 (1981), and cases cited therein.

We further note that MCL 791.265a; MSA 28.2325(1) is based upon 18 USC 4082(c) and (d). The language used in the federal provision has been adopted virtually verbatim in MCL 791.265a(1); MSA 28.2325(1)(1). MCL 791.265a(1)(a); MSA 28.2325(1)(1)(a) is a near verbatim rendition of 18 USC 4082(c)(1). MCL 791.265a(1)(b); MSA 28.2325(1)(1)(b) is taken directly from the federal

code, except the state provision excludes a proviso appearing in the federal statute. MCL 791.265a(3); MSA 28.2325(1)(3) is practically identical to 18 USC 4082(d), with certain cross-references to the federal code replaced by references to Michigan statutes.

Where a legislative body enacts a statute based upon the laws of another jurisdiction, it is assumed that the borrowing state's legislature intended any judicial construction of the statute rendered in the other jurisdiction to the extent that the enactments are analogous. *Detroit Fire Fighters Ass'n, Local 344, IAFF v Detroit,* 96 Mich App 543, 545; 294 NW2d 842 (1980). In construing a statute, legislative history may be considered to ascertain the legislative intent. *Hutter v Ingham County,* 8 Mich App 719, 723; 155 NW2d 250 (1967). In the instant matter, there are no analogous federal decisions to rely on. The reason why this is so is that eligibility for community placement under the federal code contains no blanket preclusions by statute or rule. Even violent criminals may be considered for community placement under the federal code, although they must undergo an additional level of review before they may participate in the program. See 28 CFR § 570.16 (1981) and the official comment to the rule, 45 Fed Reg 75127, 75132 (1980). Michigan compiles no legislative histories as such. However, given the similarities between the Michigan and federal statutes, it is fair to consider the federal legislative history in determining what the Michigan Legislature envisioned by enactment of MCL 791.265a; MSA 28.2325(1).

In 1973, the federal code was amended to provide for extensions of the 30-day limit on furloughs (which is also allowed by the Michigan statute).

The legislative history pertaining to this amendment is replete with numerous references noting that its purpose, and that of the act generally, is to ease the transition from incarceration to community placement. The Senate report on the federal legislation indicates that the risk of recidivism and danger to the community is increased when prisoners are released without adequate preparation to meet the challenges of liberty. The report further suggests that early supervised release from detention into the community can strengthen work, social, and family ties which may have deteriorated as a result of the incarceration. See, generally, 1973 US Code Cong & Adm News, p 3019 *et seq.*

It would appear that the Michigan Legislature's explicit decision to allow even those convicted of assaultive crimes to be ultimately eligible for participation in community placement represents its determination that, even as to those convicted of violent offenses, the value of their participation in a community placement program outweighs the danger to the community in properly screened selective instances. Nobody could deny (indeed at oral arguments the department's counsel acknowledged) that community placement may have just as salutory effect for "drug traffickers" as for any other class of prisoners. In light of the similarities between the state and federal community placement statutes and the federal legislative history, we are compelled to conclude that nothing in the Michigan statute suggests that it was the legislative intent to exclude "drug traffickers" from even consideration in a community placement setting.

We now turn to a consideration of the arguments advanced by the department for upholding the "drug traffickers" rule and policy directive.

The department first asserts that any restriction on its discretion to exclude a class of prisoners from community placement impinges on its legislatively granted exclusive jurisdiction over state penal institutions, MCL 791.204; MSA 28.2274, and its authority to determine appropriate security classifications. MCL 791.264; MSA 28.2324.

We fail to see how requiring the Department of Corrections to end its blanket refusal to consider "drug traffickers" for community placement impinges on the jurisdictional grant to the department. Our holding neither allows this nor any other court to involve itself in the operation of any penal institution. The department retains jurisdiction over the institutions, the prisoners, and even over whether any alleged "drug trafficker" will ultimately be allowed to participate in a community placement program.

Our holding might arguably be deemed a restriction on the department's discretion to make security classifications (although it is clear that we are not forcing the department to accept anybody as a participant in community placement). To the extent that our holding in any way interferes with the department's security classification process, it is our opinion that this is in accordance with the Legislature's will. In our opinion, MCL 791.265a; MSA 28.2325(1) is a specific provision which controls over the more general grant of discretion in the department to classify prisoners appearing in MCL 791.264; MSA 28.2324. When two statutes encompass the same subject matter and are in conflict, the generally proper rule of construction to apply is that the more specific provision controls. *Manville v Board of Governors of Wayne State University,* 85 Mich App 628, 636; 272 NW2d 162 (1978), *Krim v Commercial Union Assurance*

*Co,* 94 Mich App 639, 641-642; 288 NW2d 463 (1980).

The department also asserts that the Legislature has acquiesced in its interpretation of its authority by failing to amend MCL 791.265a; MSA 28.2325(1) in light of the rule and policy directive precluding "drug traffickers" from community placement. We disagree. The legislative acquiescence principle is only applicable where there exists a long-standing administrative construction. Here, the rule and policy directive in issue have been in effect only since November, 1977, and August, 1978, respectively. In *People v Dunn,* 104 Mich App 419, 425; 304 NW2d 856 (1981), this Court rejected application of the legislative acquiescence doctrine when considering a Secretary of State's interpretation which only went into effect following a 1977 amendment to MCL 257.625; MSA 9.2325.

The department also asserts as follows:

"The legislature has recognized that eligibility for community placement requires consideration of the public interest and should only be granted to inmates who have a demonstrated history of non-violent behavior and trustworthiness. Such programs are clearly of benefit to an inmate since they aid in the difficult transition from prison to free society and they are clearly in the public interest since they are aimed at reducing recidivism, encouraging stability of employment, and reducing overcrowded prison conditions. Despite these laudable aspects, however, some of the general public view such programs with trepidation since they result in felony offenders being given a certain amount of freedom within a local community prior to expiration of their minimum sentences. Success of the community placement programs depends to a significant degree upon the acceptance and cooperation of local communities and local law enforcement officers. For this reason the Department of Corrections has, in determining which inmates should be eligible for con-

sideration, taken into account the natural public distrust of certain types of offenders, particularly narcotics traffickers."

In light of the wording of MCL 791.265a; MSA 28.2325(1), we believe that this excerpt from the department's brief on appeal represents an acknowledgment that its rule was a political response to a perceived problem with public acceptance of community placement programs. However, the Legislature makes policy, and administrative bodies must carry out legislative decisions whether or not the public disapproves of these decisions. The United States Supreme Court made a particularly apt remark some 100 years ago in *Merritt v Welsh,* 104 US 694, 704; 26 L Ed 896 (1882), stating:

"If experience shows that Congress acted under a mistaken impression, that does not authorize the Treasury Department or the courts to take the part of legislative guardians and, by construction, to make new laws which they imagine Congress would have made had it been properly informed, but which Congress itself, on being properly informed, has not, as yet, seen fit to make."

We further note that the public, as expressed in opinion polls, consistently disapproves of community placement programs for any class of felons. Moreover, it is not at all obvious to us that the public has a greater enmity toward "drug traffickers" than, for example, toward burglars, who are eligible for community placement under the Department of Corrections' rule and policy directive. Finally, it strikes us as unlikely that the public has a greater distrust for persons who were convicted of possession of 7 grams of a mixture con-

taining 20% pure cocaine or 100 tablets of Valium
without a prescription (both are "drug traffickers"
within the policy directive), than for burglars who,
whatever their past criminal record for burglaries
reveals, are immediately eligible for consideration
in community placement. The absurdity of the
department's political decision is even more obvi-
ous when one remembers that murderers, armed
robbers, kidnappers, rapists, those who have com-
mitted felonious assaults, and the like, are eligible
for community placement under the department's
policies 180 days before the expiration of their
minimum sentences, while a defendant who pos-
sesses 7 grams of a mixture containing 20% pure
cocaine is never eligible.

Since we conclude that the Department of Cor-
rections' rule and policy directive precluding "drug
traffickers" from consideration for placement in
the community program fails to comply with the
underlying legislative intent of the act, we need
not address whether the definition of "drug traf-
ficker" should have been adopted pursuant to the
Administrative Procedures Act, MCL 24.201 *et
seq.;* MSA 3.560(101) *et seq.,* whether the "drug
trafficker" classification is unconstitutionally stan-
dardless and vague, or whether the department
has impermissibly subdelegated its authority to
determine who is a "drug trafficker".

We stress that our holding in no way suggests
that participation in the community placement
program by "drug traffickers" or anybody else is a
matter of right. The department remains free to
choose to exclude individual prisoners from partici-
pation on a case-by-case basis. What we do hold is
that the department may not exclude an entire
class of prisoners from consideration in the com-
munity placement program in light of the restric-

tions and exclusions explicitly adopted by the Legislature.

If the Department of Corrections feels strongly about its position that "drug traffickers" should not be eligible for community placement programs, it should push for further legislative action. This matter can be easily remedied by a specific legislative enactment, amending MCL 791.265a; MSA 28.2325(1), to provide that "drug traffickers" are ineligible for consideration in community placement. We are not unsympathetic to the department, but for us to rule in its favor in light of the current status of the statute allowing for community placement would amount to legislation by judicial fiat.

The order in Docket No. 56020 is affirmed insofar as the lower court's determination regarding the blanket preclusion of consideration of "drug traffickers" from community placement programs is concerned. The order in Docket No. 52779 is reversed insofar as the lower court held that plaintiff's classification as a "drug trafficker" automatically precluded his consideration for community placement. Remanded for further proceedings consistent with this opinion. No costs, a public question being the heart of this controversy.