EDMOND v DEPARTMENT OF CORRECTIONS (ON REMAND)

LUTTRELL v DEPARTMENT OF CORRECTIONS (ON REMAND)

Docket Nos. 84153, 84154. Submitted April 11, 1985, at Lansing.—
Decided June 4, 1985.

This appeal on remand involves two Ingham Circuit Court cases
dealing with the Michigan Department of Corrections' author-
ity to exclude "drug traffickers", as defined by that department,
from consideration for eligibility in community placement pro-
grams. In one case, Percy Edmond petitioned the court, seeking
a permanent injunction enjoining the Department of Correc-
tions from designating him as a "drug trafficker". The court,
Jack W. Warren, J., found the designation to be neither arbi-
trary nor capricious and denied Edmond any relief. In the
second case, Brenda S. Luttrell and Francis Garnica brought a
class action asserting, among other things, that the Department
of Corrections' blanket preclusion of consideration of "drug
traffickers" from participation in community placement pro-
grams exceeded the department's statutory authority to pro-
mulgate rules. The court, James T. Kallman, J., agreed that
the blanket exclusion violated the intent of the Legislature and
was arbitrary and capricious. Plaintiff, Percy Edmond, appealed
the decision in the first case and defendant, Department of
Corrections, brought a delayed appeal of the decision in the
second case by leave granted. The appeals were consolidated.
The Court of Appeals held that the department's rule and
policy directive precluding drug traffickers from community
placement eligibility failed to comply with the underlying
legislative intent of the community placement act and that the
department could not exclude an entire class of prisoners from
consideration for participation in the community placement
program. The Court found it unnecessary to address plaintiff's
remaining arguments, i.e., whether the definition of "drug
traffickers" should have been adopted pursuant to the Adminis-
trative Procedures Act, whether the "drug trafficker" classifica-

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 60 Am Jur 2d, Penal and Correctional Institutions § 3 et seq.

[2] 16A Am Jur 2d, Constitutional Law § 804 et seq.

[4] 1 Am Jur 2d, Administrative Law § 69 et seq.

tion is unconstitutionally vague, and whether the department impermissibly subdelegated its authority to determine who is a "drug trafficker", 116 Mich App 1 (1982). The Department of Corrections appealed to the Supreme Court, which held that the plain language of the statute does not preclude a construction that the department is authorized to define eligibility for community placement by category in addition to the two categories for which the Legislature has explicitly defined eligibility. The Supreme Court vacated the opinion of the Court of Appeals and remanded the matter to the Court of Appeals for consideration of the questions raised by plaintiffs but not decided. 421 Mich 1 (1984). On remand, *held:*

1. Plaintiffs' argument that the department's policy directive establishes the criteria for community program eligibility and should have been promulgated as a rule in accordance with the Administrative Procedures Act is rejected. The policy directive, in which "drug trafficker" is defined, may fairly be considered a functional interpretation of the underlying department rule. Statements explaining rules are not subject to the various strictures applied to administrative rules.

2. Plaintiff Edmond's argument that due process entitles him to a hearing at which he may challenge his departmental classification as a "drug trafficker" is rejected. The possibility of participation in the community placement program does not rise to the level of a liberty interest protected by due process. Furthermore, plaintiffs' rights are sufficiently protected by the procedures already established.

3. Plaintiffs' final argument, that part of the definition of "drug trafficker" contained in the policy directive allows persons other than the department to classify plaintiffs and, therefore, constitutes an impermissible subdelegation of authority, is also rejected. There is no impermissible subdelegation of authority.

The trial court's decision in *Edmond* is affirmed and the trial court's decision in *Luttrell* is reversed.

1. ADMINISTRATIVE LAW — DEPARTMENT OF CORRECTIONS — POLICY DIRECTIVES — ADMINISTRATIVE PROCEDURES ACT.

   A policy directive issued by the director of the Department of Corrections need not be promulgated as an administrative rule in accordance with the Administrative Procedures Act where the directive at issue may fairly be considered a functional interpretation of a rule.

2. CONSTITUTIONAL LAW — DUE PROCESS.

   The due process clauses of the United States and Michigan

Constitutions apply where government action deprives a person of a liberty or property interest; to determine whether due process requirements apply in the first place, courts look to the nature of the interest at stake because to obtain a protectible right a person must have a legitimate claim of entitlement to it, not just an abstract need, desire, or unilateral expectation of it (US Const, Am V; Const 1963, art 1, § 17).

3. ADMINISTRATIVE LAW — DEPARTMENT OF CORRECTIONS — DRUG TRAFFICKERS — COMMUNITY PLACEMENT PROGRAMS.

Prisoners classified as "drug traffickers" and thereby excluded from consideration for eligibility in community placement programs under an administrative rule adopted by the Department of Corrections have a right to an administrative hearing to challenge that classification (MCL 791.251; MSA 28.2320[51]).

4. ADMINISTRATIVE LAW — DISCRETIONARY ACTS.

An administrative agency may not subdelegate the exercise of discretionary acts unless the Legislature expressly grants it authority to do so.

*John W. Davis,* for Percy Edmond.

*Martin A. Geer* and *William Burnham,* for Brenda S. Luttrell and Francis Garnica.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas L. Casey,* Assistant Attorney General, for defendant.

## ON REMAND

Before: BRONSON, P.J., and T. M. BURNS and CYNAR, JJ.

PER CURIAM. This appeal involves the Department of Corrections' authority to exclude "drug traffickers", as defined by the department, from consideration for eligibility in community placement programs. By MCL 791.265a; MSA 28.2325(1), the Legislature empowered the director of the Department of Corrections to create community placement programs for prisoners who the

director reasonably believed would "honor his trust". The department adopted a rule, 1979 AC, R 791.4410, and a departmental policy directive which precluded drug traffickers from community placement eligibility. Rather than restate the facts of these consolidated cases here, we simply refer to our earlier opinion, *Edmond v Dep't of Corrections,* 116 Mich App 1; 321 NW2d 817 (1982).

In our earlier opinion, we held that the department's rule and policy directive failed to comply with the underlying legislative intent of the act and that the department could not exclude an entire class of prisoners from consideration for participation in the community placement program. Given our holding, we found it unnecessary to address plaintiffs' remaining arguments, namely, whether the definition of "drug traffickers" should have been adopted pursuant to the Administrative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.,* whether the "drug trafficker" classification is unconstitutionally vague, and whether the department impermissibly subdelegated its authority to determine who is a "drug trafficker". 116 Mich App 13.

On appeal to the Supreme Court, the Court held "that the plain language of the statute does not preclude a construction that the Department of Corrections is authorized to define eligibility for community placement by category, in addition to the two categories for which the Legislature has explicitly defined eligibility". *Luttrell v Dep't of Corrections,* 421 Mich 93, 95; 365 NW2d 74 (1984). The Court, therefore, vacated our opinion and remanded this matter to us "for consideration of the questions raised but not decided there". *Id.* We do so now.

Plaintiffs argue that the department's policy

directive establishes the criteria for community program eligibility and should have been promulgated as a rule in accordance with the Administrative Procedures Act. We disagree.

MCL 791.265(a); MSA 28.2325(1) requires the director of the department to promulgate rules to implement this section. Pursuant to this statutory mandate, and in accordance with the Administrative Procedures Act, 1979 AC, R 791.4410 was promulgated. This rule provides in part:

"Rule 410. (1) A resident is eligible for consideration for community status when the head of the institution at which he or she is confined reasonably believes that the resident will honor this trust, that release would not undermine public confidence in the program, and that the resident meets all of the following criteria:

\* \* \*

"(c) Has no involvement in organized crime, professional criminal activities, or narcotics traffic. Residents with histories of substance abuse are eligible so long as there is no history of involvement in narcotics traffic beyond personal use and limited sale to support the resident's own addiction."

While this rule does not define the phrase "involvement in narcotics traffic", a definition of "drug trafficker" is contained in a policy directive issued by the director as follows:

*"Drug Trafficker"*

"a. A conviction for delivery or possession of a controlled substance that involved:

"1. Seven grams or more of any substance containing heroin or cocaine, or

"2. One pound or more of marijuana, or

"3. One hundred units (pills, capsules, etc.) of any other controlled substance.

"b. That local law enforcement officials (police or prosecutor) confirm on the basis of reliable evidence

that the individual is considered by them to be a significant trafficker in controlled substances in the community.

"c. Conviction for delivery or possession with intent to deliver controlled substances without any history of personal controlled substance use."

The Administrative Procedures Act defines "rule" and pertinent exclusions in MCL 24.207; MSA 3.560(107):

"Sec. 7. 'Rule' means an agency regulation, statement, standard, policy, ruling or instruction of general applicability, which implements or applies law enforced or administered by the agency, or which prescribes the organization, procedure or practice of the agency, including the amendment, suspension or rescission thereof, but does not include the following:

\* \* \*

"(h) A form with instructions, an interpretive statement, a guideline, an informational pamphlet or other material which in itself does not have the force and effect of law but is merely explanatory."

We believe that the policy directive at issue in this case may fairly be considered a functional interpretation of 1979 AC, R 791.4410 and, therefore, not a rule which must itself be promulgated as such. Interpretive statements explaining rules are not subject to the various strictures applied to administrative rules. *Thompson v Dep't of Corrections,* 143 Mich App 29; 371 NW2d 472 (1985).

For the reasons set forth in *Thompson, supra,* we agree with defendant that the policy directive in the instant case need not have been promulgated as a "rule" in accordance with the Administrative Procedures Act.

Plaintiff Edmond argues that due process entitles him to a hearing at which he may challenge

his departmental classification as a "drug trafficker". Plaintiff also argues that the definition of "drug trafficker" is unconstitutionally vague.

The due process clauses of the United States and Michigan Constitutions apply when government action deprives a person of a liberty or property interest. See *Greenholtz v Inmates of the Nebraska Penal & Correctional Complex,* 442 US 1, 7; 99 S Ct 2100; 60 L Ed 2d 668 (1979). To determine whether due process requirements apply in the first place, courts look to the nature of the interest at stake. To obtain a protectible right, a person must have more than an abstract need, desire or unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. *Board of Regents of State Colleges v Roth,* 408 US 564; 92 S Ct 2701; 33 L Ed 2d 548 (1972).

In *Pugliese v Nelson,* 617 F2d 916 (CA 2, 1980), plaintiff, a prisoner in the federal corrections institution at Danbury, Connecticut, alleged that he was entitled to due process procedural safeguards before the bureau of prisons could designate him as a "central monitoring case" (CMC). Designation as a CMC hinders or precludes a federal prisoner from participating in community placement programs. The bureau had established twelve categories of inmates deemed to require CMC status. The two categories involved in *Publiese, supra,* were as follows:

"03 SOPHISTICATED CRIMINAL ACTIVITY:

"Those inmates who have been involved in large scale sophisticated criminal activity.

"Criteria: Activities including large numbers of associates; offenses involving over $100,000; activities over an extended period of time; international or large scale national organization; or extremely sophisticated offenses.

* * *

"05 BROAD PUBLICITY: Those inmates who have received broad publicity.
"Criteria: National media coverage by syndicated news association such as UPI or AP; continued coverage by local media." 617 F2d 918.

In August of 1976, the plaintiff, who was serving a 10-year prison sentence for violation of federal narcotics laws, was notified that he had been designated as a CMC because information indicated that he was a major narcotics dealer. Despite his objection, the designation was approved by the bureau of prisons. The plaintiff then filed a habeas corpus petition in district court, alleging that the bureau's classification procedures denied him due process of law. The district court upheld the plaintiff's claim. The Court of Appeals, citing *Greenholtz, supra,* held that a prisoner's interest in avoiding CMC classification does not entitle him to due process protections. To qualify as a constitutionally protected liberty interest, the prisoner's interest must be one that is assured by statute, judicial decree or regulation. The prisoner's mere hope or possibility of participation in a prison program is insufficient since it depends wholly on the unfettered exercise of discretion by prison authorities. The Court held that:

"Under Title 18 U.S.C. §§ 4081 and 4082 the Attorney General has complete and absolute discretion with respect to the incarceration, classification and segregation of lawfully convicted prisoners. Although the Attorney General may provide for prisoner transfers, § 4082(b), grant furloughs of up to 30 days, § 4082(c)(1), and permit a prisoner to work outside a prison or engage in community activities, subject to certain conditions, § 4082(c)(2), he is under no statutory obligation to exercise any of these powers with respect to any prisoner. It

may be true, as we noted in *Cardaropoli* [v *Norton,* 523 F2d 990 (CA2, 1975)], that a CMC designation in practice delays or precludes a prisoner from being favorably considered for furloughs, transfers, work releases, participation in community activities and even early parole, but the fact remains that these freedoms are mere possibilities, like an unclassified prisoner's prospect of release on parole, with no prisoner (CMC or not) able to prove any state of facts which would entitle him to these freedoms. Non-CMC status, in other words, merely gives a prisoner a greater chance of enjoying these freedoms, it does not guarantee them." (Footnotes omitted.) 617 F2d 923, 924. See also *Marciano v Coughlin,* 510 F Supp 1034, 1037 (ED NY, 1981).

In the instant case, as in *Pugliese,* neither the enabling legislation nor the department's rules and policy directives guarantee or require that a prisoner meeting the eligibility criteria will be accorded placement in a community program. The director of the department is provided wide discretion to determine who "will honor his trust" and to whom release will be extended. *Luttrell, supra,* 421 Mich 93, 101, 104. We believe, therefore, that the possibility of participating in a community placement program offers no more than the mere hope that the benefit will be obtained. As such, the possibility of participation in the community placement program does not rise to the level of a liberty interest protected by due process.

We would, however, further note that prisoners classified as "drug traffickers" do have a right to an administrative hearing to challenge that classification. MCL 791.251; MSA 28.2320(51). Even were we to find that a protected liberty interest was implicated by defendant's classification, plaintiffs' rights are sufficiently protected by the procedures established. See, also, MCL 791.252; MSA 28.2320(52).

Plaintiffs lastly argue that part b of the defini-

tion of "drug trafficker" contained in the policy directive allows persons other than the department to classify plaintiffs and, therefore, constitutes an impermissible subdelegation of authority. We again disagree.

Pursuant to MCL 791.265a; MSA 28.2325(1), the Legislature entrusted the implementation of the community placement program to the director of the Department of Corrections. It is well settled that an administrative agency may not subdelegate the exercise of discretionary acts unless the Legislature expressly grants it authority to do so. *Detroit Edison Co v Corporation & Securities Comm,* 361 Mich 150; 105 NW2d 110 (1960).

Part b of the policy directive defining "drug traffickers" states:

"That local law enforcement officials (police or prosecutor) confirm on the basis of reliable evidence that the individual is considered by them to be a significant trafficker in controlled substances in the community."

Responsibility for classifying prisoners, however, remains in the department. The department must ultimately decide whether the evidence presented by the local law enforcement officials is reliable and whether, under the evidence presented, the prisoner is a significant trafficker. We therefore find no impermissible subdelegation of authority.

The trial court's decision in *Edmond* is affirmed and the trial court's decision in *Luttrell* is reversed. No costs, a public question being involved.