CARLSON v NORTH DEARBORN HEIGHTS BOARD OF
EDUCATION

Docket Nos. 82336, 86199. Submitted October 2, 1986, at Detroit.
Decided February 17, 1987.

Pola San Carlson was hired as a school teacher by the North
Dearborn Heights School District in 1968. In 1972 and 1975,
she took maternity leaves of four and thirty months respec-
tively. At the time these leaves were taken the collective
bargaining agreement between the school district and the
bargaining unit, the Association of Professional Teachers, pro-
vided that women could take up to three years of maternity
leave and would continue to accrue seniority during the mater-
nity leave. The school district and the bargaining unit entered
into a new collective bargaining agreement which was effective
from September 1, 1977, through August 30, 1980. The new
bargaining agreement provided that seniority was to be deter-
mined by the total accumulated service units a teacher had,
with such units being accrued at the rate of six units for each
day worked or for each day a teacher was absent for personal
illness, personal business, religious holidays, jury duty, sabbati-
cals, military service or compensable injury, but teachers on
other types of leave, including maternity leave, would receive
no service units or a limited number of service units. Teachers
on maternity leave could receive a maximum of 120 service
units. On April 25, 1978, Carlson received notice from the
North Dearborn Heights Board of Education that her employ-
ment would be terminated at the end of the then-current school
year because of anticipated decreases in enrollment and the

REFERENCES

Am Jur 2d, Actions § 88.

Am Jur 2d, Civil Rights §§ 141, 142.

Am Jur 2d, Constitutional Law §§ 580 *et seq.*

Am Jur 2d, Public Officers and Employees § 609.

Am Jur 2d, Schools § 16.

Pregnancy leave or maternity leave policy, or lack thereof, as
unlawful employment practice violative of Title VII of the Civil
Rights Act of 1964 (42 USCS §§ 2000e *et seq.*). 27 ALR Fed 537.

See also the annotations in the Index to Annotations under Actions;
Public Officers and Employees; Schools and Education; Seniority.

possibility of insufficient operating funds. On May 1, 1978, Carlson received a revised seniority list which indicated that seniority had been based upon the retroactive application of the provision granting limited service units during maternity leaves.

On May 1, 1981, Carlson commenced an action in Wayne Circuit Court against the North Dearborn Heights Board of Education, the North Dearborn Heights School District, and the Association of Professional Teachers, alleging violations of her civil rights and constitutional rights by all defendants by the retroactive application of the new seniority system and alleging breach of the duty of fair representation by the defendant union. The defendant union moved for accelerated judgment on the basis that the period of limitation had run and that the trial court lacked subject matter jurisdiction. The trial court, James A. Hathaway, J., granted the union's motion, holding that plaintiff failed to exhaust her contractual remedies. Plaintiff appealed. The Court of Appeals reversed, holding that exhaustion of remedies was not a prerequisite to a breach of fair representation suit. Unpublished opinion per curiam of the Court of Appeals, decided May 31, 1984 (Docket No. 67352). The Court remanded for consideration of the statute of limitations question. On remand, plaintiff moved for summary judgment in the trial court on the basis that there was no material question of fact that the new seniority provision was applied to her on May 1, 1978. The union moved for accelerated judgment on the basis that plaintiff's action was barred by the running of the limitation period. Judge Hathaway granted the union's motion, finding that the action accrued on April 25, 1978.

The Crestwood School District and the Crestwood Board of Education were added as defendants when the North Dearborn Heights School District was subsumed with the Crestwood School District. The school districts moved for summary disposition on the basis of the running of the period of limitation. Judge Hathaway found that plaintiff's claim accrued on May 1, 1978, and that the suit was timely; however, Judge Hathaway did grant summary disposition on the basis plaintiff failed to allege facts sufficient to prove the Civil Rights Act claim of sexual discrimination and that plaintiff failed to allege a constitutionally protected property right. Plaintiff appealed. The school districts cross-appealed.

The Court of Appeals *held:*

1. The action accrued on May 1, 1978, since that was the date upon which plaintiff was first aware that the new seniority system was being retroactively applied with respect to prior

maternity leaves. Accordingly, the trial court properly denied the schools' motion for accelerated judgment on the basis of the running of the statutory period of limitation. The trial court, however, erred in granting the union's motion for accelerated judgment on all the claims except the duty of fair representation claim.

2. The duty of fair representation claim is barred by the running of the statutory period, since that claim is subject to a six-month limitation period.

3. A sexual discrimination claim under the Civil Rights Act based on differences in employment provisions because of a bona fide seniority system requires proof of both disparate treatment or impact and an intent to discriminate. Since there exists a genuine issue as to whether the school districts intended to discriminate on the basis of sex, summary disposition on the Civil Rights Act claim was improperly granted.

4. Plaintiff had no constitutionally protected property right in the prior seniority system.

5. The trial court properly dismissed the school boards as party defendants, since, by statute, the school districts, as fourth-class school districts, are the bodies corporate capable of suing and being sued.

Affirmed in part, reversed in part and remanded.

1. ACTIONS — ACCRUAL OF ACTIONS — CIVIL RIGHTS.

An action by a teacher against a school district based on a claim that the retroactive application of a new seniority provision constituted a violation of the teacher's civil and constitutional rights accrues on the date that an action is taken by the school district which clearly would indicate to the teacher that the seniority provision was being retroactively applied.

2. LIMITATION OF ACTIONS — PUBLIC EMPLOYEES — UNFAIR REPRESENTATION.

The period of limitation within which a public employee may bring a claim against his or her union alleging unfair representation is six months (MCL 423.216[a]; MSA 17.455[16][a]).

3. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — EMPLOYMENT SENIORITY — BURDEN OF PROOF.

A person alleging violation of the Civil Rights Act by employment discrimination arising out of the application of a bona fide seniority system must prove that the provisions of the seniority system were the result of an intent to discriminate on the basis of one of the listed classifications (MCL 37.2211; MSA 3.548[211]).

4. CONSTITUTIONAL LAW — PROPERTY INTERESTS — COLLECTIVE BAR-
GAINING AGREEMENTS — EMPLOYMENT SENIORITY.

A person has no constitutionally protected property interest in
the continuation of seniority rights created by an expired
collective bargaining agreement.

5. SCHOOLS — FOURTH-CLASS SCHOOL DISTRICTS — ACTIONS — PARTIES.

A fourth-class school board is not a body corporate which can sue
or be sued; the proper party to sue or be sued is the fourth-class
school district (MCL 380.1132[1]; MSA 15.41121[1]).

*Marcia J. Covert,* for plaintiff.

*Keller, Thoma, Schwarze, Schwarze, DuBay &
Katz, P.C.* (by *Gary P. King* and *Robert A. Lusk*),
for defendant school boards and districts.

*Hiller, Larky & Hoekenga* (by *Daniel J. Hoek-
enga* and *Lisa B. Archer*), for Association of Pro-
fessional Teachers.

Before: BEASLEY, P.J., and J. H. GILLIS and M. E.
DODGE,* JJ.

PER CURIAM. Plaintiff filed suit on May 1, 1981,
claiming, among other matters, sex discrimination.
Defendant Association of Professional Teachers
(APT) moved for accelerated judgment, claiming
that the statutory period of limitation had run and
that the trial court lacked subject matter jurisdic-
tion. The trial court granted APT's motion, holding
that plaintiff had failed to exhaust her contractual
remedies prior to filing suit. Plaintiff appealed and
this Court reversed, holding that exhaustion of
remedies was not a prerequisite to a breach of
duty of fair representation suit. *Carlson v North
Dearborn Heights Bd of Ed,* unpublished opinion
per curiam of the Court of Appeals, decided May
31, 1984 (Docket No. 67352). This Court further

* Circuit judge, sitting on the Court of Appeals by assignment.

held that plaintiff's cause of action accrued when the total accumulated service units (TASU) provision in APT's contract with the school district was applied retroactively against plaintiff. Because there was a dispute as to when the TASU provision was first applied to plaintiff and because the statute of limitations issue was not decided below, this Court remanded this case to the trial court for determination of that issue.

On remand, plaintiff filed a motion for summary judgment pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10), claiming that no genuine issue of material fact existed as to the date on which the TASU provision was retroactively applied to her. Plaintiff claimed the date was May 1, 1978. APT filed a motion for accelerated judgment, claiming that plaintiff's claim accrued on April 25, 1978, and, therefore, her suit was time barred. The trial court granted APT's motion, finding that plaintiff's claim accrued on April 25, 1978, and that plaintiff's complaint, filed on May 1, 1981, was time barred. Plaintiff now appeals this order as of right.

Thereafter, North Dearborn Heights School District was subsumed within the Crestwood School District. Plaintiff moved to amend her complaint to add the Crestwood School District and the Crestwood Board of Education as defendants. Plaintiff's motion was provisionally granted at oral argument; however, the trial court later dismissed both school boards, but not the school districts, as defendants.

Subsequently, the school districts moved for summary disposition on the basis that the statutory period of limitation had run. Curiously, the trial court denied the school districts' motion as it related to the statute of limitations. The trial court found that plaintiff's claim accrued on May 1, 1978, and that her suit, filed on May 1, 1981,

was timely. This finding obviously conflicted with the trial court's earlier finding of when plaintiff's claim had accrued. Nevertheless, the trial court granted the school districts' motion for summary disposition for other reasons. Plaintiff appeals from the trial court's order granting the school districts' motion for summary disposition, and the school districts cross-appeal on the ground that the trial court erred in not granting their motion on the basis of the statute of limitations. We affirm in part, reverse in part and remand.

Before discussing the issues presented, we discuss the facts underlying this case. Plaintiff was hired by North Dearborn Heights School District in 1968. During her employment, plaintiff took two maternity leaves. The first was from March until June, 1972; the second, from January, 1975, until June, 1977. Plaintiff concedes that she extended her second leave for purposes of child care. In doing so, plaintiff relied on the collective bargaining agreement, then in effect, which allowed a woman to take up to three years of maternity leave and to continue to accrue seniority during that time.

On September 13, 1977, APT and North Dearborn Heights School District entered into a new collective bargaining agreement to be effective from September 1, 1977, through August 30, 1980. Under this new agreement, seniority was determined by the total number of service units which were accumulated. Service units were determined by giving a teacher six units for each of the 180 school days taught. Hence, a teacher could accrue 1,080 service units per year. Teachers who were absent because of personal illness, personal business, religious holidays, jury duty, sabbaticals, military service, or teachers who were receiving workers' compensation would receive the full number

of service units. Teachers on other types of leave, including maternity leave, received only a limited number of service units or no service units. Those on maternity or paternity leave could receive only 120 service units.

Shortly before the contract was ratified, plaintiff realized that if the TASU provision was applied retroactively her seniority would be reduced. At this point, it should be noted that the collective bargaining agreement does not explicitly provide that the TASU provision is to be applied retroactively. Nonetheless, William Naubert, then the president of APT, believed that it was understood that the TASU provision was to be applied retroactively. This interpretation was contradicted by George Leonard, who was North Dearborn Heights School District's superintendent until he resigned in 1977. He stated: "I don't recall in any of the negotiating process that [the TASU provision] was to go back prior to an earlier date. . . . It was my understanding that whatever was ratified in the contract we would live with that date, and it would come in effect that date." Moreover, plaintiff alleges that APT representatives urged her to ratify the collective bargaining agreement told her that and, *if* the TASU provision were applied retroactively, negotiations could be reopened.

After the collective bargaining agreement was ratified, plaintiff and other similarly-situated women (North Dearborn Heights School District's Superintendent Leonard stated that no man had taken paternity leave from 1968 until 1977) filed a grievance letter with Superintendent Leonard as well as the Michigan Civil Rights Commission. Leonard responded to plaintiff's letter by stating that plaintiff's remedy was to go to APT and have them try to reopen negotiations. Later, APT unsuccessfully tried to reopen the negotiations.

On April 25, 1978, plaintiff was pink-slipped in what is apparently standard operating procedure for financially strapped school districts. At that time, plaintiff received the following letter:

> This is to advise you that the Board of Education, at its Regular Meeting held Monday, April 24, 1978, took action to terminate your employment with the School District of North Dearborn Heights effective at the close of school June 9, 1978. We regret that due to an anticipated decrease in enrollment and the possibility of insufficient operational funds this action was necessary.
>
> If we can be of any help to you in seeking other employment please let us know.

However, plaintiff was called back to work in August, 1978, and she taught until June 15, 1979, when she was laid off pursuant to a seniority list which had applied the TASU provision retroactively. Plaintiff alleges that she was similarly laid off on the basis of a post-TASU list until 1985.

On May 1, 1978, plaintiff received a revised seniority list which, in her mind, clearly indicated the TASU provision was applied retroactively. That seniority list, designated "Seniority List As of May 1, 1978," applied the TASU provision retroactively. Following the typist's initials on this list appeared the notation "4/25/78." Earl Gabriel, who became North Dearborn Heights School District's superintendent after Leonard, submitted an affidavit claiming that plaintiff's April 25 layoff was based on the May 1 list.

As noted above, plaintiff filed suit on May 1, 1981. Plaintiff's complaint, which has been amended three times, alleges sex discrimination, breach of APT's duty of fair representation, and failure to provide due process. By stipulation, only two counts remain in plaintiff's complaint as to

the school districts: (1) violation of the Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.;* and (2) violation of plaintiff's due process rights. Plaintiff also challenges the trial court's dismissal of the school boards as defendants as to those counts. Finally, plaintiff's claim of appeal as to APT concerns only the issue of whether plaintiff's claim against APT was barred by the statute of limitations.

We first address the issues of whether the trial court erred in granting APT's motion for accelerated judgment, or, in the alternative, whether the trial court erred when it denied the school districts' motion for summary disposition on statute of limitations grounds. As noted above, the trial court found that plaintiff's claim accrued on April 25, 1978, for the purpose of APT's motion, but that it accrued on May 1, 1978, for purposes of the school districts' motion.

We agree with the statement contained in our previous opinion in this case that plaintiff's cause of action accrued when the TASU provision was applied as to plaintiff so as to constitute an actionable wrong. *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146; 200 NW2d 70 (1972). In this case, plaintiff was pink-slipped on April 25, 1978. Plaintiff received a letter to that effect on the same day. This letter was the same type of pink slip plaintiff had received on other occasions during her tenure. Nothing in the letter indicated that the decision to lay off plaintiff was based on retroactive implementation of the TASU provision. In fact, we believe that it is at least disingenuous for Superintendent Gabriel to submit an affidavit stating that the decision to lay off plaintiff was based on retroactive application of the TASU provision given: (1) the decision to lay plaintiff off was made at a school board meeting on

April 24, 1978; (2) the May 1, 1978, seniority list was not typed until April 25, 1978; (3) the seniority list was dated "As of May 1, 1978"; (4) layoff decisions were made pursuant to the last available seniority list and a news update distributed by APT on February 8, 1978, stated that teachers recalled in January, 1978, were being recalled on the basis of a March 23, 1977, seniority list; and (5) for plaintiff, the January, 1978, recall could be taken as an indication that the TASU provision, part of a September, 1977, collective bargaining agreement, would not be retroactively applied. Even if we accepted Gabriel's claim that the decision to lay plaintiff off was made by retroactive application of the TASU provision, this does not mean that plaintiff was aware that the TASU provision had been retroactively applied. It was not until the actual publication of the May 1, 1978, seniority list that plaintiff learned that the TASU provision would be retroactively applied. All of plaintiff's previous actions were taken in the event that the TASU provision was retroactively applied. As noted above, the evidence was contradictory on this point, while the contract itself was silent. In fact, on March 16, 1978, APT President Naubert sent a letter to Gabriel asking the school board to allow the contract's language to be amended. From all of this, we can only conclude that the TASU provision was applied so as to constitute an actionable wrong against plaintiff on May 1, 1978. See and compare *City of Huntington Woods v Wines,* 122 Mich App 650; 332 NW2d 557 (1983). Consequently, we affirm the trial court's decision denying the school districts' motion for summary disposition on the basis of the statute of limitations.

However, at this point, we note that APT claims that a six-month statute of limitations applies to plaintiff's breach of the duty of fair representation

claim under the public employment relations act, MCL 423.216(a); MSA 17.455(16)(a). See *Ray v Organization of School Administrators & Supervisors, Local 28, AFL-CIO,* 141 Mich App 708; 367 NW2d 438 (1985). Plaintiff counters with a nebulous argument that the three-year statute of limitations applies because she is alleging a "common-law" breach of the duty of fair representation. We agree with APT's position and find that plaintiff's duty of fair representation claim is barred by the six-month statute of limitations. *Id.* Hence, we affirm the trial court's decision granting APT's motion for accelerated judgment on the basis of the period of limitation as to plaintiff's breach of the duty of fair representation claim, but we reverse the trial court's decision insofar as it applies to plaintiff's other claims against APT. Because the merits of plaintiff's remaining claims against APT were not decided below, we remand for further proceedings as to those claims.

Hence the remainder of our discussion will concern plaintiff's claims against the school districts and boards. As previously noted, only plaintiff's sex discrimination and due process claims against defendant school districts and boards remain.

Plaintiff claims that defendant school boards and school districts violated her rights under the Civil Rights Act by applying the TASU provision retroactively. MCL 37.2202; MSA 3.548(202). The parties concede that the application of MCL 37.2211; MSA 3.548(211) is determinative. That section provides:

> Notwithstanding any other provision of this article, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions or privileges of employment pursuant to a bona fide seniority or merit system.

Plaintiff claims that she should be entitled to recover if she demonstrates that retroactive application of the TASU provision had a disparate impact on women who had taken maternity leaves in excess of four weeks. This Court has recently held that a plaintiff may prevail under the Civil Rights Act by proof of either disparate treatment or disparate impact. See *Farmington Education Ass'n v Farmington School Dist,* 133 Mich App 566; 351 NW2d 242 (1984).

Section 703(h) of Title VII, 42 USC 2000e-2(h), from which the Civil Rights Act was modelled, provides:

> Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority . . . system, . . . *provided that such differences are not the result of an intention to discriminate because of . . . sex* . . . . [Emphasis supplied.]

This provision, unlike § 211, specifically requires the plaintiff to prove a discriminatory intent before a bona fide seniority system will be held to violate Title VII. *Pullman-Standard, a Division of Pullman, Inc v Swint,* 456 US 273; 102 S Ct 1781; 72 L Ed 2d 66 (1982); *International Brotherhood of Teamsters v United States,* 431 US 324; 97 S Ct 1843; 52 L Ed 2d 396 (1977).

Plaintiff claims that, because § 211 omitted the intent language of 42 USC 2000e-2(h), our Legislature intended disparate impact to be enough when the Civil Rights Act is applied to bona fide seniority systems. The problem with plaintiff's argument is that it would make § 211 superfluous. For that reason, we will read the intent requirement of 42

USC 2000e-2(h) into § 211. See *Farmington Education Ass'n, supra,* p 573, n 3.

In *Teamsters, supra,* 431 US 355-356, the United States Supreme Court held:

> The seniority system in this litigation is entirely bona fide. It applies equally to all races and ethnic groups. To the extent that it "locks" employees into non-line-driver jobs, it does so for all. . . . The placing of line drivers in a separate bargaining unit from other employees is rational, in accord with the industry practice, and consistent with National Labor Relations Board precedents. It is conceded that the seniority system did not have its genesis in racial discrimination, and that it was negotiated and has been maintained free from any illegal purpose.

Hence, a bona fide seniority system is one which (1) applies to all employees similarly on its face, (2) is in accord with industry practice, and (3) was not conceived for the purpose of discrimination. To us, all of these factors seem to relate to proof of discriminatory intent on the part of the defendant.

In *Swint, supra,* 456 US 278-283, the United States Supreme Court discussed the following factors as determinative of discriminatory intent: (1) whether the seniority system is facially neutral and equally applied to all employees; (2) whether the defendant's seniority provisions were consistent with those of similar industries; (3) whether the seniority system was enacted for the purpose of discrimination; and (4) whether the seniority system was negotiated and maintained free from any illegal purpose. The Court noted that discriminatory impact, although relevant when determining an employer's intent, was not sufficient to support a finding of discriminatory intent. The Court further noted that the issue of intent should be treated as a factual issue for the trier of fact.

Defendant school boards and districts brought their motion for summary disposition under MCR 2.116(C)(10), that there was no genuine issue of material fact. This Court has held:

> Such a motion for summary [disposition] should not be granted when there is an issue of material fact, since the motion tests the factual support for plaintiff's claim. The trial court must consider the affidavits submitted, pleadings, depositions, admissions and documentary evidence. The opposing party must show that a genuine issue of disputed fact exists. The test is whether the kind of record which might be developed, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ. This Court is liberal in finding a genuine issue of material fact. [Citations omitted. *Linebaugh v Berdish,* 144 Mich App 750, 753-754; 376 NW2d 400 (1985).]

In this case, we find that there exists a genuine issue of material fact as to whether defendant school districts' decision to apply the TASU seniority system retroactively was the result of intention to discriminate against plaintiff because of her sex. *Swint, supra; Teamsters, supra; Linebaugh, supra.* Therefore, we reverse the trial court's order granting defendant school districts' motion for summary disposition on plaintiff's sexual discrimination claim and remand this case for further proceedings on this issue. We note that on the discriminatory intent issue the school districts' intentions should be treated separately from the intention of APT. *Swint, supra,* 456 US 292.

Plaintiff also claims that she had a constitutionally-protected property right in her pre-TASU seniority which could not be taken away without due process. US Const, Am XIV; Const 1963, art 1, § 17. In *Edmond v Dep't of Corrections (On Re-*

*mand),* 143 Mich App 527, 533; 373 NW2d 168 (1985), this Court held:

> The due process clauses of the United States and Michigan Constitutions apply when government action deprives a person of a liberty or property interest. To determine whether due process requirements apply in the first place, courts look to the nature of the interest at stake. To obtain a protectible right, a person must have more than an abstract need, desire or unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. [Citations omitted.]

We find that plaintiff merely had a hope that her pre-TASU seniority would remain untouched by the new collective bargaining agreement. Because seniority rights are created by a collective bargaining agreement, our courts have held that a bargaining representative may in later negotiations with an employer modify or abrogate the seniority rights previously accrued by its members. See *Cortez v Ford Motor Co,* 349 Mich 108; 84 NW2d 523 (1957); *Holman v Industrial Stamping & Mfg Co,* 344 Mich 235; 74 NW2d 322 (1955); *Zdero v Briggs Mfg Co,* 338 Mich 549; 61 NW2d 615 (1953); *Hartley v Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express & Station Employees,* 283 Mich 201; 277 NW 885 (1938); *Ryan v New York C R Co,* 267 Mich 202; 255 NW 365 (1934). See also *Ford Motor Co v Huffman,* 345 US 330; 73 S Ct 681; 97 L Ed 2d 1048 (1953); *Ash v Bd of Ed of the Woodhaven School Dist,* 699 F2d 822 (CA 6, 1983); *Charland v Norge Division, Borg-Warner Corp,* 407 F2d 1062 (CA 6, 1969), cert den 395 US 927 (1969), reh den 396 US 871 (1969). Hence, we conclude that plaintiff had no property interest in her previously-accrued seniority rights under an expired collective bargaining agreement. *Id.*

Finally, plaintiff claims that the trial court erred when it dismissed the North Dearborn Heights and Crestwood School Boards from this suit. The trial court dismissed the school boards from the suit because the fourth class school district act, MCL 380.101 *et seq.;* MSA 15.4101 *et seq.,* is silent on the ability of a fourth-class school board to sue or be sued. Plaintiff concedes both school boards are fourth-class school boards. MCL 380.1132(1); MSA 15.41132(1) provides that "[e]ach school *district* shall be a body corporate under the name provided in this act [and] may sue and be sued in its own name." (Emphasis supplied.) MCL 380.401(3); MSA 15.4401(3) specifically provides that a first-class school district *board* may be sued. There is no similar provision for a fourth-class school board. MCL 380.101 *et seq.;* MSA 15.4101 *et seq.* Hence we can only conclude that a fourth-class school board, as opposed to a school district, is not a corporate body which may sue or be sued. Compare MCL 380.401(3); MSA 15.4401(3). The trial court, therefore, properly dismissed both school boards from this case and we affirm its order doing so.

This case is affirmed in part and reversed and remanded in part as provided in this opinion. No costs.